## SUPERIOR OIL CO. v. DABNEY et al.
### No. 11903.

Court of Civil Appeals of Texas. Galveston.
July 24, 1947.

Rehearing Denied Oct. 9, 1947.

Jacques Adoue, W. B. Wagner, Jesse J. Lee and Williams, Lee, Kennerly & Cameron, all of Houston, for appellant.

Hutcheson, Taliaferro & Hutcheson and Palmer Hutcheson, all of Houston, for appellees.

GRAVES, Justice.

This appeal is from a judgment of the 113th District Court of Harris County (Hon. Ben F. Wilson, Judge presiding), sitting without a jury, decreeing—pursuant to this State's Declaratory Judgments Act, Vernon's Ann.Civ.St. Article 2524—1—in material substance as follows:

"I. That the written agreement of the appellees (otherwise termed the Hutcheson heirs) with the appellant, The Superior Oil Company, on December 30, 1941, which has never been recorded, is a valid, subsisting agreement, binding and obligating the appellant to drill a well in search of oil, or gas, upon the James Ross Survey in Montgomery County, Texas, and the conditions set out in said agreement precedent

to the enforcement of said obligation by the appellees have been complied with.

"II. The drilling obligation of said agreement has never been complied with by appellant, nor superseded, modified, altered, discharged, or waived, in any respect, and appellant, though obligated to drill as agreed, has wholly failed to do so, and has been, and is, in default.

"III. The appellant is not entitled by tender of a release and surrender of the oil, gas, and mineral lease between appellees, or their predecessors in title, and The Superior Oil Company, on the 20th day of December, 1941, recorded in Volume 226, pages 135-141, Deed Records of Montgomery County, Texas, to be discharged and relieved of said drilling obligation, as expressed in said agreement. The release and surrender heretofore tendered by appellant to appellees as to all but eighteen (18) acres of the land leased, and refused and rejected by appellees, is insufficient and inadequate, and without effect to discharge any obligation of appellant, under said lease and agreement."

Other than as so recited in its judgment, the trial court was neither requested to nor did it file any accompanying findings of fact, or conclusions of law; its recited findings, therefore, as well as any further ones that may judicially be deemed to have been necessary to support the judgment, must, on the appeal, be regarded as the established facts of the cause.

The court added a fifth (V) provision to its decree, relating to any right to further relief, based on such quoted declaration of an obligation to drill, as vouchsafed under Section 8, of the cited statute; but since neither side invoked that subsidiary procedure, the addition became functus officio.

Inveighing here against the judgment so adverse to it below, appellant presents, in substance, these ten points of error:

"The court erred in holding:

"(1) That the lease contract—written in two instruments, one recorded, one not recorded, executed contemporaneously by appellant and appellees, on December 20, 1941—with respect to the oil, gas, and minerals in the James Ross Survey, are not to be construed together as constituting the single complete contract between the parties.

"(2) That the release executed and delivered by appellant to appellees—under the release and surrender clause in the recorded instrument—was wholly ineffectual to, and did not discharge and relieve appellant of the drilling and all other obligations as to the acreage surrendered.

"(3) That the lease contract with respect to drilling on the Ross Survey was not modified and changed by the subsequently-executed Pooling and Unit Operating Agreements, which did not require drilling on the Ross, or any other survey.

"(4) That the inclusion of 18 acres of the Ross Survey in the participating area, under the Pooling and Unit Operating Agreements, did not satisfy the drilling obligation on the Ross Survey claimed by appellees.

"(5) That appellant is obligated to drill a well for appellees on the James Ross Survey, neither the drilling of the well nor the cost of such drilling being the relief, or measure of damages, to which appellees would be entitled in case of breach.

"(6) That appellant was obligated to drill a well on the Ross Survey, when the conclusive evidence shows that the Ross is only a part of the large pooled area held as one lease, on which, prior to this suit, production from wells satisfied all initial drilling-requirements; there being no pleading, or proof, that additional drilling under any covenant for development will be profitable to appellant and appellees.

"(7) The court erred in refusing to admit in evidence facts offered by appellant, which show that prior to appellees' lease to appellant, and at all times since, the south 93-acre part of the James Ross Survey, nearest to production, was adversely claimed by South Texas Development Company and actually fenced and used by its tenant, so that possession and good title to said survey were not delivered by appellees to appellant,—from which it follows that appellant was not obligated to drill in the face of such adverse possession and claim.

"(8) The court erred in refusing to admit in evidence facts showing that the tract

of 93 acres off of the south side of the said Ross Survey was, and is, involved in litigation that appellees themselves brought against South Texas Development Company and Stanolind Oil and Gas Company, to which litigation this defendant in 1945 was made a party-defendant by cross-action filed by Stanolind Oil and Gas Company, — from which it follows that appellant was not obligated to drill.

"(9) The court erred in refusing to require that all persons who executed the Pooling and Unit Operating Agreements be made parties to this cause.

"(10) The court erred in refusing to transfer this cause to the District Court of Montgomery County, Texas, in which county the James Ross Survey in controversy is situated."

None of these contentions, it is determined, should be sustained; indeed, most of them seem to this court to be tangential, as affects the one controlling question of law the trial court determined: That there did exist and subsist, as of the date this suit was filed by the appellees against the appellant, that is, November 29 of 1946, and until the judgment herein on March 10, 1947, an obligation upon appellant's part to drill a well for the appellees, under the terms of the written contract declared-upon by the latter, in form and substance as authorized by our "Uniform Declaratory Judgments Act," Vernon's Civil Statutes, Title 46A, Art. 2524—1.

That result was arrived at by the court's construction of the contracts between the parties, as the final legal effect thereof, after taking into consideration appellant's stated objections thereto, and the acts done by both sides from the date thereof in 1941 until the filing of this suit in 1946; it is true, as the decree shows, that the court went further and expressly negatived the effectiveness, against the contractual relationships, of appellant's major objections and defenses thereto, and in so doing, found against it on the matters of fact and other conditions precedent to the enforcement of the obligation it found upon it to so drill.

It bindingly found all relevant matters of fact against the appellant, so that, in so far as any and all of its presentments here rest upon contrary contentions as to the facts and procedure antecedent to the judgment, they are without support, hence ineptly urged in this court.

■ For instance, the court expressly based its holding that appellant was under a legal obligation to drill on the Ross Survey upon the two written instruments appellant correctly asserts to have been the contract between the parties, that is, the "Agreement to Drill" and the "Mineral Lease," contemporaneously executed December 20, 1941; wherefore, its first point to the contrary is mislodged. These two instruments, the one, that is, the agreement to drill, supplementing the other, the mineral lease, both and each, by their provisions, unequivocally bound the appellant to so drill, and, as the trial court by necessary inference concluded, they were merely supplementary to, and not contradictory of, each other, and related to the same subject matter, hence were construable together. Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 404, 405, 121 S.W.2d 583; Veal v. Thomason, 138 Tex. 341, 348, 159 S.W.2d 472, 475; Perry & Co. v. Langbehn, 113 Tex. 72, 79, 252 S.W. 472, 474; 17 C.J. 714.

■ The trial court bindingly found, as indicated, that all pre-existing factual antecedents to the application of such contractual provisions under both instruments for the drilling by the appellant had been shunted out of the way; not only so, but further, that the appellant, while having remained at all times during the pendency of the two-co-existing elements of the contractual obligation it thereby took to drill on the Ross Survey, had finally failed and refused to do so; in fact, the evidence is undisputed, in addition to such indicated findings by the court, that appellant, when ultimately called upon by the appellee to comply with such obligation upon its part, then refused to do so, and thereupon, instead, offered the release its second point-of-error, supra, deals with, whereby it sought unilaterally to cancel and surrender the Mineral Lease described; contending that, upon the terms of that instrument, it had such right of release thereunder and that its exercise thereof relieved it of the drill-

ing-obligation on the Ross, as well as all other obligations it had as to the entire acreage surrendered; obviously, the trial court was correct in holding that no such effect could properly be given the mineral lease contract; in the first place, as the court found on the facts, the appellees rejected and repudiated such release as being wholly unsatisfactory and unauthorized, which position the court upheld; moreover, such release as so tendered by appellant never purported to surrender all the Ross Survey—expressly retaining 18 acres therein, described as being within the "participating area" of the Pooling Agreement—and it further required the joinder of the appellees, as the lessors therein, which, as found by the court, they declined to accept; indeed, in so repudiating such tendered release, it undisputedly appears that the appellees at that time, August 12 of 1946, retaliated upon appellant with a written demand that it then drill on the Ross Survey, in view of their own compliance with all conditions precedent to such drilling under the terms of both documents so constituting the drilling contract.

Appellant then interposed the Pooling Agreement which had been executed by both parties hereto on November 16 of 1942, after their own contracts had been entered into on December 20 of 1941—invoked in its point-of-error No. 3, supra—as having exonerated it from any such claimed obligation to drill on the Ross Survey as the appellees had declared upon, on the ground that such was its necessary effect, and that their preceding contract, by both subsequently joining in the Pooling agreement, had thereby so modified their former one.

█ The complete answer to this much-mooted question and contention of the appellant seems to this court to be (as it evidently likewise did to the trial court) that no such effect could properly be given to such pooling agreement, because it "was expressly made applicable by its terms 'as to only the lands which are included within any participating area,' and did not, therefore, relieve the original lessee from any 'drilling and development requirements' as to land not embraced within the participating area. This is necessarily true as to the separate drilling obligation not included within the terms of the lease."

Thus, since only 18 acres of the appellees' Ross Survey was included within the pooling agreement, it is evident from this quoted provision of the latter that appellees did not give up any of their then-existing contract rights in the balance of the 796 acres in that survey, nor can the language of that agreement be properly construed as impairing the original drilling agreement and obligations between the parties hereto as to the balance of the land in that survey; indeed, it reasonably appears that this subsequent transaction, known as the "Pooling Agreement" and the "Unit Operating Agreement," were merely for the purpose of enabling one operator, for all the participating owners of lands going into that arrangement, to build a recycling plant and manufacture what were termed "unitized substances"; and furthermore, as indicated supra, even for that apparently controlling purpose, it was operative "as to only the lands which are included within any participating area"—that is, to only 18 acres of the appellees' Ross Survey.

█ It is held that there was no reversible error involved in the court's exclusion of testimony as to the existence of a boundary suit and an adverse claim of the South Texas Devolpment Company, owner of the Goheen Survey, affecting 93 acres off of the south side of the Ross Survey; this for the reason that the drilling obligation, so found by the court to rest on the appellant, applied to all the Ross Survey of some 796 acres, of which some 700 acres were shown not to be in dispute or litigation; moreover, the contract between these parties only bound the appellant to drill a well somewhere on the Ross Survey "at a location satisfactory to it," which obviously meant a location selected by the lessee itself, and not by the lessor; wherefore, this contention, it is thought, relates to a matter wholly immaterial to such a declaratory judgment application as this suit constituted.

█ Appellant's 9th and 10th points are overruled as being without merit; these contentions for requiring the presence in this simple litigation of all the par-

ties to the pooling and operating units referred to, and the transfer of the venue of the cause to Montgomery County, in which the Ross Survey lies, are all either based upon subsequent agreements to those involved here, the parties to which would not be necessary to the determination of this proceeding, or upon an idea that the suit in its nature was one involving land within Subdivision 14 of R.S. Article 1995. Neither presentment is well taken. Greer v. Scearce, D.C., 53 F.Supp. 807; Schriber Sheet Metal & Roofers v. Shook, 64 Ohio App. 276, 28 N.E.2d 699; Mecom v. Gallagher, Tex.Civ.App., 192 S.W.2d 804; Caven v. Hill, 83 Tex. 73, 18 S.W. 323; 43 Tex.Jur., 746; Lanier v. Looney, Tex.Civ. App., 2 S.W.2d 347 (writ refused).

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.