ROBERT D. GOODRICH *v.* THE SUPERIOR OIL COMPANY.

No. A-2948. Decided March 7, 1951.
Rehearing overruled April 18, 1951.
(237 S. W., 2d Series, 969.)

*Cecil, Keith & Mehaffy* and *Quentin Keith,* all of Beaumont, *Maurice Cheek, Ira Butler, Cantey, Hanger, Johnson, Scarborough & Gooch,* and *Gillis A. Johnson,* all of Fort Worth, for appellant.

*Williams, Lee & Kennerly, Jesse J. Lee,* and *Willard B. Wagner,* all of Houston, for appellee.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

The certificate concerns the right of appellee, The Superior Oil Company, as holder of a large number of oil and gas leases, to maintain an action in the form of interpleader in Montgomery County, where the leased land lies, against the appellant, Robert D. Goodrich (apparently an assignor) and some 238 other defendants, as against the plea of appellant Goodrich to be sued in Tarrant County, where he resides. Appellant's plea of privilege

was overruled by the trial court, and this holding is approved by the tentative opinion of the Court of Civil Appeals.

The question certified is:

"Do the allegations in plaintiff's petition show venue in the Montgomery County District Court under subdivision 14 of Article 1995 as against the defendant Robert D. Goodrich?"

Subdivision 14 referred to reads:

"14. Lands.—Suits for the recovery of lands or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to provent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie."

The content of appellee's petition, which consists of seven sections and an "EXHIBIT 'A'", may be described as follows:

Section I identifies the plaintiff appellee, Superior, and is not otherwise material to the controversy.

Section II lists the defendants with their respective residences, giving no further data about them or their connection with the suit. A few of them are thus shown to reside in Montgomery County and the rest in other places within and without the state. As residing in Tarrant County, the list includes names identical with those of defendant P. C. Bundy and appellant Goodrich.

Section III describes a particular tract of some 1896 acres in Montgomery County by mere reference to the survey and two fairly old deeds. It says that appellee "is now the owner and holder of valid and subsisting oil, gas and mineral leases covering the oil, gas and minerals in, on and under" the above-mentioned tract, said leases being listed in "EXHIBIT 'A'"; that each lease "is now in full force and effect"; and that appellee has completed and is producing two gas wells on the tract (their location not being otherwise indicated).

"EXHIBIT 'A'" is divided into four consecutively numbered sub-lists. The numerous leases thus listed are respectively described but only to the extent of the date of execution, recordation data, name of the lessor or lessors and name of the lessee. The number of lessors is quite large, but there is only one lessee in each lease and only five lessees in the aggregate, to wit, "Robert D. Goodrich", "P. C. Bundy", "Clayton N. Smith",

"W. E. O'Neall" and "G. R. Garrett". It may be noted here that, as to names, "EXHIBIT 'A' " is identical with the abovementioned list of the defendants, except that the defendants do not include a W. E. O'Neall or G. R. Garrett and that they *do* include some seventy-five names not appearing at all in "EXHIBIT 'A' ". The relation of these seventy-five defendants to the litigation is explained only to the extent of rather general allegations hereafter mentioned, and indeed it is hard to say that the position of any particular defendant, including appellant Goodrich, is ever clearly defined.

Section IV states "that as a result of sales of production from said wells on said tract", three certain funds have accumulated in the possession of appellee and that similar funds are accruing and will accrue. The section consists of three parts, (a), (b), and (c) which respectively deal with the three distinct funds and corresponding sums accruing and to accrue, as follows:

Part (a) refers to a fund ($18,705.01 accrued) which it explains merely as being "allocable to one-eighth (1/8th) royalty reserved under the terms and conditions of the leases listed in "EXHIBIT 'A' " attached hereto, and due and payable to the owner or owners thereof in accordance with the terms and conditions of said * * * leases". The "owner or owners" of these basic royalties are not further identified.

Part (b) refers to a further fund ($16,366.88 accrued) "allocable to " an "overriding royalty" of "one-eighth (1/8th) of seven eighths (7/8ths)" which is "reserved under the terms and conditions of" certain identified leases in "EXHIBIT 'A' " and "payable to the owner or owners thereof" in accordance with the terms mentioned. The corresponding language of the specified leases is quoted, including the provision that the payments in question are to be made "to Lessor in that proportion only which the interest owned by Lessor in said land bears to the entire fee simple estate in said land."

It is noted that neither parts (a) or (b) of this sec. IV purport to connect any particular defendant with the funds or royalties, though by comparing the list of lessors with the list of defendants, one might conjecture from identity of names, that probably some at least of the "owner or owners" are meant to be certain named defendants.

Part (c) refers to a third fund ($24,550.33 accrued). It

recites that instruments of assignment were executed in favor of appellee Superior by "Robert D. Goodrich" of all the listed leases except the six constituting the 4th group in the Exhibit, and by one Tulane Gordon of these latter six. As to these it is stated that previously a similar assignment had been made to Gordon by "P. C. Bundy". (This last name appears as lessee of the six leases in question. As to the leases figuring in the Goodrich assignments, only a minority of them ran to "Robert D. Goodrich" as lessee, and there is no allegation of assignments to Goodrich by the other lessees Bundy, Smith, O'Neall and Garrett abovementioned, though appellee yet alleges itself to own the leases and says that Goodrich executed assignments of them to appellee).

Part (c) goes on to state that the assignments to appellee contain provisions for an overriding royalty to the respective assignors, being three-sixteenths of seven-eights "of all the oil, gas and other minerals produced and saved from said land hereunder", and that the abovementioned sum of $24,550.33 on hand, and similar funds accruing and to accrue, are "allocable to" such royalty and due in whole or part to "the owner or owners thereof in accordance with the terms and provisions of said instruments of assignment." Who may be, or claim to be, "the owner or owners" is not further stated, though, no doubt, the assignor "Robert D. Goodrich" is the indicated owner of the royalties reserved in his assignments, there being no statement that his apparent interest has been alienated or reduced. We may, presumably, take it that this Goodrich is also the defendant-appellant of the same name. The assignor, Tulane Gordon as stated, is not a defendant, though "P. C. Bundy", Gordon's assignor, may doubtless be taken as the defendant of the same name. In connection with the Bundy-Gordon-Superior chain of assignments, evidently but one royalty is involved, to wit, the three-sixteenths of seven-eights reserved by Bundy.

Of conceivable significance is the provision of the Goodrich and Bundy assignments quoted as follows: "If the lessors in the leases hereby assigned own an interest in said land less than the entire mineral estate, then the overriding royalties herein reserved shall be reduced proportionately."

The final sentence of sec. IV states "that a dispute exists between certain of the defendants herein as to *the ownership of the oil, gas and minerals underlying the tract of land above described* and that said defendants have heretofore and are now asserting (sic) adverse and conflicting claims *thereto and* to

the *royalties which have accrued and are accruing under said
* * * leases* owned by petitioner (appellee) including said
monies now in the possession of petitioner" (Emphasis sup-
plied). This is the only allegation in the petition concerning a
dispute and obviously omits to identify the disputing defendants.
As to the character of their antagonistic claims, while the
quoted language appears to contemplate (1) claims of owner-
ship of the minerals generally, as well as (2) claims to owner-
ship of the royalties reserved in the leases, it yet does not
seem to include the idea that either type of claim is antagonis-
tice to the asserted rights of appellee as owner of the lease-
hold estate in the tract. Moreover, the thought that some de-
fendants might be claiming rights in the minerals apart from
the leases, seems at variance with the allegations of sec. IV,
that the three funds in question are "allocable to" the royalties
and "due and payable to" the owners of the royalties. As to the
alleged dispute over ownership of the royalties (as distinguished
from general mineral ownership), such royalties are only said
to be those "under * * * said leases" and, by strong inference,
not to be those reserved by Goodrich and Bundy under their
assignments.

Section V states briefly that appellee "has no interest in the
funds" described in parts (a), (b) and (c) of sec. IV, "un-
less and except the court should find" that the corresponding
leases listed in the Exhibit "cover less than the entire fee simple
estate in said tract". As to the fund described in part (c) as
"allocable to" the overriding royalties reserved by assignors
Goodrich and Bundy, and as to the fund described in part (a)
as "allocable to" the ordinary royalties, it is expressly denied
that the "unless and except" condition exists in fact; appellee
thus asserting again the validity of the title of the lessors of the
leases, which it holds to the entire mineral estate in the tract,
and the corresponding valid rights of itself as leaseholder, and
of its assignors as owners of the full overriding royalties re-
served in their assignments. After stating further, and without
qualification, its indifference to the funds, appellee tenders the
total "to such persons * * * as may be lawfully entitled thereto".

Section VI declares the right of appellee to attorney fees
"in equity and good conscience".

The final section, No. VII, pleads lack of a remedy except
in equity and prays (1) permission to pay the funds into court
or to the parties entitled to the same and for discharge there-
upon from all claims of the defendants and for injunction against

prosecution of any claims by the defendants; (2) that the defendants be cited and required "to interplead with each other to settle and determine their respective rights" to the funds and those to accrue in future "on account of said various royalty interest or said production from the tract* * * above described"; (3) for adjudication "to whom and in what proportion said royalty payments accruing and hereafter accruing shall be made"; for costs and attorney fees to be paid appellee from the sums tendered, and for general relief.

The defendant Bundy aforementioned filed a disclaimer, showing that whatever connection he had with the land in question was simply for account of the appellant Goodrich, to whom he had executed a formal assignment of his rights long prior to the filing of the suit.

At the hearing on the plea, the foregoing disclaimer was introduced by appellant. The only other relevant evidence was produced by appellee, being to the effect that (1) seventy five of the defendants were not lessors of any of the leases involved, and (2) the abovementioned accrued funds, aggregating $59,622.22, were deposited in court upon the filing of the petition and the further sum of $53,791.12 so deposited thereafter. Appellant admitted the land in question to lie in Montgomery County.

Our conclusion is that the question certified should be answered, "No".

■ The general rule of venue is, of course, that a defendant shall be sued in his own county, and however many and important are the exceptions contained in the statute, an equal doubt between the exception and the rule is to be resolved in favor of the rule. Stated differently, the application of the exception must clearly appear. Burtis v. Butler Bros., 148 Texas 543, 226 S. W. 2d 825, and cases cited at p. 828. This principle has not been altered by Rule 47 or others of our Rules of Civil Procedure. See Rule 816, which expressly refers to their effect on venue.

■ Doubtless under some circumstances venue of an interpleader suit of a producer over disputed royalties or other sums due from oil production is maintainable under the terms of subdivision 14. However, in the present suit, we do not think the petition makes a proper case for the subdivision in respect of the appellant Goodrich, since it fails to establish application of the exception with sufficient clarity to warrant depriving appel-

lant of his general and valuable right to be sued at his residence.

The question certified assumes, and properly so, that the disclaimer of the defendant Bundy was properly considered and that it operated to eliminate the possibility of a controversy between Bundy and appellant.

As the tentative opinion correctly indicates, the suit, if it involves appellant at all, must be taken as involving him only in so far as it may also involve an assertion by some other defendant of mineral ownership inconsistent with the title evidenced by the leases. There is nothing to indicate that appellant has or asserts an interest in those royalties that are reserved in the leases themselves (Petition, secs. IV (a) and IV (b) ) and ownership of which is said to be in dispute between "certain of the defendants." The implication is that appellant is only interested in his overriding royalties under the assignments referred to in sec. IV(c), as to which he is specifically named. His name does not appear as a lessor or in any other capacity that might connect him with the lease-royalties. And, since the alleged dispute concerning ownership of royalties is restricted to royalties "under the * * * leases", it appears that no other defendant is disputing appellant's apparent ownership of his assignment-royalty *qua* royalty. Clearly the appellee Superior does not assert ownership in itself of appellant's assignment-royalty, nor allege that appellant does not really own it or is making some wrongful claim against appellee by reason of it. Appellee evidently disclaims any title in itself otherwise than under the leases and assignments.

A dispute between the defendants, which affects appellant, if any does affect him, must therefore be one referred to by the words "as to the ownership of the oil, gas and minerals" (rather than ownership of royalties) or, in other words, a claim of title against the leasehold title. But appellant, who would not hold his overriding royalty but for having acquired and assigned the leases, and who is not said to have any rights in the minerals unless it be that royalty, can hardly be taken as himself asserting some claim contrary to the lease title. So such a claim, if concerning appellant at all, must be one made against him by some other defendant. As indicated, the intent, if any, of the pleader to allege this latter controversy must rest upon the allegation of a dispute as to the ownership of the minerals, aided perhaps by the further allegation (in sec. V) that appellee has no interest in the tendered funds "unless and except" it should be found that the leases "cover less than the entire fee simple estate in said tract." The difficulty about establishing this

intention is that, repeatedly and in categorical fashion, as well as by inference, appellee asserts that the lease title is good in appellee, and evidently as a result of the assignments, under which appellant holds his overriding royalty. If the title of the lessors is good as to appellee, it would seem good also as to appellant. If it is defective as to appellant, it is also defective as to appellee, and yet appellee asserts no dispute between itself and any defendant over appellee's title to the minerals, but by this omission and its positive assertion of good title under the leases, strongly infers that there is no such dispute. When appellee says it has no interest in the tendered funds "unless and except" there be a failure of title, it adds "which this petitioner says is not the fact". As previously pointed out, the funds tendered are described as being owing, not by reason of appellee having produced and sold oil of a cotenant along with its own, but because of royalties to which the funds are said to be "allocable". If the funds tendered are "due and payable" because of the royalties, and are due to the owners of the royalties, then they are not due to anyone claiming the mineral title as against the leases or assignments under which the royalties arose. Therefore, assuming that a general title claim of some defendant against appellant, if clearly alleged, would establish venue here under subdivision 14, and assuming further that, the allegations as to the "dispute" and the words of the "unless and except" clause, when considered alone, may be taken to indicate such a claim, this latter conclusion is yet so at variance with the rest of the petition that, considering the document as a whole, we cannot say it evidences the claim with sufficient clarity to maintain venue thereby.

It is suggested that, since the meagre allegations of the "unless and except" clause should be deemed to have some purpose, they should be taken as declaring a suit by appellee against appellant to clear its title to the leasehold estate of a doubtful situation between appellant and appellee as to the amount of appellant's overriding royalties, which might be brought to light by some claim to be made by a defendant, that (contrary to the categorical allegations of the petition) there is a failure of title on the part of the lessors, with corresponding reduction of appellant's interest. Such a suit is evidently envisioned as one in the alternative, in view of the positive allegations of the petition that there has been no failure of title, from which the doubtful situation between appellant and appellee might arise. Obviously it is not spelled out in anything like the customary form, and the absence of an appropriate prayer for alternative relief is conspicuous. The statement of a mere possibility of such

a doubtful situation, or even of the possibility of a claim of appellant against appellee for excessive royalties, is not an allegation of cloud or threatened cloud upon the title of appellee. Carver v. First National Bank, Tex. Civ. App. 45 S. W. 475, writ denied. See also the opinion of Judge Gill in Newman v. Newman, Tex. Civ. App., 86 S. W. 635, 638. The suggested suit would appear to be more in the nature of a declaratory judgment suit or suit to determine the correct amount owed by the plaintiff than of a suit to remove cloud within the meaning of subdivision 14 of Art. 1995. Scott v. Noakes, Tex. Civ. App., 277 S. W. 735, wr. dismissed; Wright v. Kaler, Tex. Civ. App., 293 S. W. 315, wr. dism.; Bowman v. Muncy, Tex. Civ. App., 197 S. W. 2d 866. Superior Oil Co. v. Dabney, Tex. Civ. App., 204 S. W. 2d 681 (reversed on other grounds, 147 Texas 51, 211 S. W. 2d 563). In any event, the process by which an alternative suit of appellee against appellant must be deduced is so largely one of mere inference and even doubtful inference, that we do not consider the suit clearly enough stated to warrant depriving the appellant of his valuable right to be sued at home. The "unless and except" clause, followed by the clause "which * * * is not the fact", might not unreasonably be taken as merely an appropriate step to negative any thought that the appellee actually had an interest in the fund, which it elsewhere unconditionally tenders as belonging to others. See Story, Equity Pleading sec. 292, as quoted in Williams v. Matthews, 47 N. J. Eq. 196, 20 Atl. 261. The "indifferent stakeholder" status of appellee is, of course, important in connection with its unqualified demand for attorney fees.

None of the authorities cited for the appellee are adverse to our conclusion, including Veal v. Thomason, 138 Texas 341, 159 S. W. 2d 472. That case was clearly a suit by the plaintiff to recover land. The defendants were the mineral lessor or lessors and lessee. The lease on the tract in question had been "unitized" with leases of other tracts. Venue was not in question. The defendants pleaded that the lessors of the other tracts had, by the unitization, acquired a royalty interest in the tract in suit and should have been joined as additional defendants,. This plea was sustained and the case dismissed on the plaintiff's refusal to amend; such ruling being approved by this court. The questions there were whether the royalty interests of the nonjoined lessors were interests in the tract of land in suit and whether such lessors were accordingly necessary parties, the answers to both being in the affirmative. The suit was not an interpleader type of suit, and there was no doubt about what kind of suit it was. Here the latter point, including an interpretation of the

petition, is the main question, at least so far as appellant Goodrich is concerned. Appellant makes no contention that his royalty is other than an interest in land, nor is there any question here as to application of exception 29a of the venue statute —a matter which, according to the certificate before us, was abandoned by appellee.

Opinion delivered March 7, 1951.

Rehearing overruled April 18, 1951.