BART DeLATT & ASSOCIATES, INC.,
Appellant,

v.

Gussie KNIGHT, a Widow, Appellee.

No. 4126.

Court of Civil Appeals of Texas.

Waco.

May 23, 1963.

Baker, Botts, Shepherd & Coates, Finis Cowan, Jr., Houston, for appellant.

Moise H. Simon, Bay City, Helm, Jones, Pletcher & Winkelman, Butler, Binion, Rice & Cook, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

TIREY, Justice.

Defendant has perfected its appeal from an order overruling its plea of privilege to be sued in Harris County. In the plea of privilege defendant avers that on March 17, 1960, it was not a corporation and was not doing business as a corporate firm; that defendant, DeLatt, the party claiming such privilege, was not, at the institution of the suit, a resident of Brazoria County, but, on the contrary, he was a resident of Harris County, Texas.

The judgment is assailed on one point. It is that "The trial court erred in overruling appellant's plea of privilege because appellant is not a resident of Brazoria County and no exception to exclusive venue in the county of its residence, Harris County, exists."

A statement is necessary. Frank Knight, a foreman for the George R. Brown Lease Service, was killed on March 17, 1960, while performing his duties in the course of his employment. He had been employed by the Pano Tech Exploration Corporation to install a pumping unit on its Ross Lease in Brazoria County. Testimony was tendered to the effect that prior to the installation of the unit, it had been determined that the length of the stroke on the pumping unit was too short, and in order to lengthen it, it was necessary to change the position of what is known as the "wrist pin"; that in order to remove the wrist pin, Frank Knight and a fellow employee placed a hydraulic jack behind the pin and exerted pressure in an attempt to force it out, but before and during this jacking process, heat was applied around the area of the pin by means of an acetylene torch; that the wrist pin on a pumping unit is located at the bottom portion of the counter-balance

weight or "crank"; that the crank is suspended in a vertical position out from the main body of the unit; that while the pressure of the jack was being exerted on the wrist pin, the crank broke in an area some fourteen to eighteen inches above the pin and fell on Knight, crushing him. The claimant's petition alleges that her husband's death was caused by the negligence of each of the defendants. Appellee also alleges that the accident was caused by the negligence of Parkersburg Rig & Reel Company, the manufacturer of the pumping unit, Oil Field Salvage Company, the seller of the unit, and Pano Tech Exploration Company, the owner of the lease upon which the accident occurred. The appellant was employed by Pano Tech Exploration Corporation to furnish engineering advice concerning the installation of the pumping unit on the lease; that Duke Moreland, engineer was in the employ of appellant, and was the only employee of appellant who had any connection with the matters in suit and that Moreland's sole duty was to observe the installation of the unit to see that the well was not damaged in that process. He was not in charge of the actual installation of the unit; that his principal function was to make certain that the well was not injured; that Moreland inspected the pumping unit two or three weeks prior to the accident while it was on the premises of the Oil Field Salvage Company; that his only purpose in examining the unit at that time was to make certain that it was of a proper size and that there were no missing parts. He did not and was not required to make a detailed inspection of the counter-balance weight or crank at that time. Moreland had had no training or experience insofar as the quality of metal is concerned. It is appellant's contention that Moreland's only connection with the removal of the wrist pin was to suggest that it be moved to a different position to increase the stroke of the pumping unit. He had made the suggestion during the week preceding the accident pursuant to his duty to see that the unit was properly assembled in relation to the well. Appellant also contends that Frank Knight actually made the

determination to use the jack and heat to remove the pin. On the day of the accident Moreland came to the pumping unit only a few seconds before Knight was killed. It is appellant's contention that prior to the accident Moreland did not observe the jack in position behind the wrist pin, but he did see the welder heating around the pin as he approached the unit; that the break in the crank was a clean one and the line left by it being straight across and having no jagged ends. The appellee in her controverting affidavit referred to her first amended original petition and incorporated it as a part of her controverting plea, and in addition thereto specially plead that the court had venue under the provisions of Section 9a of Article 1995, Vernon's Ann.Tex.St. As we understand appellee's position it is to the effect that the evidence is without dispute that appellant was employed by the Pano Tech Exploration Corporation to supervise the installation of a pumping unit on the lease, and that Moreland was assigned as engineer in charge on that job with duties according to his testimony as follows:

"Q. And as an engineer on that job, it was your overall duty, on that particular job and on any job that you were employed through DeLatt, to see that the work was done properly, was it not?

"A. Yes.

$$* \quad * \quad * \quad * \quad * \quad *$$

"Q. And they employed you to see * * * this pumping unit was properly installed?

"A. Yes."

■ Appellee contends that the record shows that the overall procedure as to what was to be done was within the hands of Moreland, the engineer, and that as a part of Moreland's duties he was to see that safe practices were followed. We think the foregoing statement is too general and that it is basically inaccurate with all of the testimony tendered, and for that reason we are not in accord with appellee's view. It is true that Moreland was a geologist em-

ployed by appellant, and that appellant had been employed by the owner of an oil well where the accident happened to watch the operation and installation of a pumping unit to be placed on the well, and it was Moreland's duty to protect the interest of the well. Moreland said insofar as his instructions were concerned by his boss: "* * * the safety of that well is my prime concern"; that his concern was to see that in the installation of the pumping unit that nothing happened to the well; that he did not give any of the people on the job any instructions as to what to do; that Mr. Knight, who was killed, was supervising the installation and that he gave Knight no instructions, and that his sole duty was to protect the well; that he knew that Knight and those helping him were working on the crank to remove a wrist pin, and that they had started on the day previous; that is to say, Friday or Saturday before Knight was killed on the following Monday; that his purpose in being there was: "Well, I was there to keep a workman from putting a chain or a cable around the well and possibly breaking off a valve, or something like that"; that he was there to give what advice he could if the construction company asked him.

"Q. In order to protect this well, you first had to observe that they did this work in a way you considered proper so as not to harm the well, did you not?

"A. That's right.

"Q. And you were there also as an expert to give them advice?

"A. No, sir.
*    *    *    *    *    *

"Q. Then as a part of your job, you were working for DeLatt, and in the performance of your duty you were there to give them, to tell them, to specify how they were to put the pumping unit on in order to safeguard the interests of the well. Am I correct in that?

"A. Yes."

That a man by the name of Long· was supervisor, and that Knight was working under Long's instructions, and both were in the employ of Brown and were in nowise connected with appellant's company; that Pano Tech Exploration Corporation employed appellant and its purpose in so doing was to see that the pumping unit was properly installed, and that was the work he was doing on the day the accident happened; that on the day of the accident he had been at the well for only about 15 or 20 seconds, and that he observed Knight and the other men using a jack, and that he walked up to the crank where they were doing the job and had been there only 15 or 20 seconds when the accident happened.

"Q. * * * and you say you saw nothing that they were doing out there that you would regard as being a bad method of conducting the work?"

"A. Of the things that I saw before the accident, they were proceeding normally."

That when his boss, Mr. DeLatt, put him on the job he told him: "He said, go down and watch the installation of the pumping unit and see that nothing happens to the well." Our view of the evidence is that Knight selected the plan to remove the wrist pin and he proceeded to· go about doing it in the way that he thought it should be done, and there is no evidence that Moreland gave him any instructions about doing this particular work of removing the wrist pin, nor is it shown whether Knight discussed the manner of removing the wrist pin with his superior, Mr. Long.

Appellee relies on Exception 9a, of Article 1995 Texas Civil Statutes, to sustain venue in Brazoria County. Exception 9a is:

"9a. Negligence.—A suit based upon negligence per se, negligence at common law or any form of negligence, active or passive, may be brought in the county where the act or omission of negligence occurred or in the county

where the defendant has his domicile. The venue facts necessary for plaintiff to establish by a preponderance of the evidence to sustain venue in a county other than the county of defendant's residence are:

"1. That an act or omission of negligence occurred in the county where suit was filed.

"2. That such act or omission was that of the defendant, in person, or that of his servant, agent or representative acting within the scope of his employment.

"3. That such negligence was a proximate cause of the plaintiff's injuries."

As we understand appellee's pleading she has not pleaded any specific negligence acts or omissions on the part of appellant or its agents. It appears that her theory is that appellant's agent Moreland, stood by and watched Knight and his crew perform an unsafe operation without warning them of the danger. We think there is no evidence to support such a theory, and that such issue is not tendered, because the record is barren of any evidence that the method employed and selected by Knight to remove the wrist pin was unsafe. Evidence was tendered to the effect that the use of the jack and heat is a common practice in removing wrist pins from pumping units when they cannot be driven out with a hammer. Evidence was also tendered to the effect that Knight had performed the same operations to remove wrist pins on a number of previous occasions. It is our view that there is no evidence that the method of work being used was anything other than customary and a normal every day method of performing this job. There is certainly no evidence that any negligence on the part of Moreland was a proximate cause of the accident giving rise to Knight's death. Evidence was tendered to the effect that Knight had previously decided how he would remove the wrist pin before he un-

dertook to do so, and that he and the other members had been at the well on the day of the accident since about 7 o'clock in pursuance of their plan, and there is an absence of any evidence that Moreland gave any instructions to Knight as to the manner in which it should be removed, and that Moreland got to the well only a few seconds before the accident happened. That leads us to say that appellee's theory that Moreland allowed the crew to use an unsafe method is untenable because of the fact that all the evidence in the record indicates that Knight himself selected the manner of performing the work, and Knight himself was actually in charge of the supervision of the work.

Under the record here the only possible cause of the accident which appears from the record is that the metal of the crank was defective. The evidence reveals that this was a hidden defect that could not be discovered even by a careful visual inspection. Under these circumstances there is insufficient evidence to tender an issue or any act of Moreland or his employer which could have been the proximate cause of the accident. We are of the view that appellant has failed to prove by a preponderance of evidence any of the venue facts required by Sec. 9a, to Article 1995, V.A.T.S., and we think the order of the trial court overruling appellant's plea of privilege should be reversed and the cause transferred to Harris County, Texas. See Goodrich v. Superior Oil Company, 150 Tex. 159, 237 S.W.2d 969, point 1. See also Austin Bridge Company v. Polanca, Tex.Civ.App., 300 S.W.2d 173. Needless to say that the proof that an accident occurred is not of itself evidence of negligence. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195. At the hearing on the plea of privilege counsel for appellee orally informed the court that appellee was relying on subd. 4, and that he would amend his controverting affidavit to so indicate; such an amendment was not made. Our Supreme Court, in Victoria Bank & Trust Co. v. Monteith, 138 Tex. 216, 158 S.W.2d 63, opinion adopted, point 3, stated: " * * * venue can-

not be retained in Harris County under an exception not invoked, or upon a venue fact not alleged as such, in the controverting affidavit." So far as we know our Supreme Court has not changed that rule. See Hudson & Eads, Inc. v. Enlow, Tex.Civ. App., 302 S.W.2d 479, n. w. h. Moreover, we see no evidence, and certainly insufficient evidence, that would sustain venue in Brazoria County under Subdivision 4, because it is our view that plaintiff failed to prove by a preponderance of the evidence that she had a valid cause of action against a resident in Brazoria County. See Texas Venetian Blind Co. v. Bond, 146 Tex. 212, 205 S.W.2d 977; Stockyards Nat. Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300; Compton v. Elliott, 126 Tex. 232, 88 S.W. 2d 91.

Accordingly, the judgment of the trial court overruling appellant's plea of privilege is reversed, and the cause transferred to one of the District Courts of Harris County, and costs incurred prior to the time such suit is filed in the court to which said cause is transferred shall be taxed against plaintiff. See Rule 89, Texas Rules of Civil Procedure.