W. J. SELDON, Appellant,

v.

Cecil GREEN et ux., Appellees.

No. 720.

Court of Civil Appeals of Texas, Tyler.

July 26, 1973.

Mike Hatchell, Ramey, Brelsford, Flock, Hutchins & Carroll, Tyler, for appellant.

Jack Norwood, Holcomb & Norwood, Tyler, for appellees.

McKAY, Justice.

This is a venue case involving subdivision 9a of Art. 1995, Vernon's Ann.Tex. Civ.St., in which appellee Green and wife brought suit against appellant Seldon for damages for personal injuries and property damage alleged to have resulted from the negligence of Seldon, his employees or agents. The trial court overruled Seldon's plea of privilege and this appeal resulted.

Green and his wife were returning to Tyler by automobile from a trip to Louisiana on February 9, 1969, and traveled via Interstate Highway 20 to U. S. Highway 271, then proceeded toward Tyler on Highway 271. The scene of the accident was at the intersection of Highway 271 with Loop 323 where Green's vehicle ran into a "2 foot high of dirt embankment" on the south side of the intersection as he proceeded in a southerly direction. Green had observed road construction signs for approximately three (3) miles prior to reaching the intersection at about 6:00 p. m. to 6:30 p. m. and he drove cautiously at approximately twenty-five (25) miles per hour.

Highway 271 was a four lane divided highway, divided by a concrete median. Green was driving in the inside lane next to the median. As he approached the intersection, which is controlled by a traffic light, he noticed the light was green so he continued in the traffic lane next to the median at 20 to 25 miles per hour, and "so I just eased on across the highway; and when I did, I run into that—the angle had been cut off of there." He testified his car ran into a "2 foot high of dirt embankment." Green further testified that there were no signs, signal or devices, "Not even a plank," warning of the presence of the dirt embankment, and that there was nothing in front of him to block his view of the road ahead or the embankment, and

that he struck the embankment with the front of his car.

Green further testified as follows:

Q. "* * * I said, the two outside lanes shown on this chart here, lane 'B' and lane 'A'—if you had been in either one of those lanes, you would have passed right on through the intersection, and you couldn't have collided with anything, could you?

A. "If I had went straight across.

Q. "Straight across?

A. "Yes.

Q. "But you got in the left-hand turn lane and went straight across, and ran into some type of embankment, according to your testimony. Is that right?

A. "That's right."

Green in other testimony said there were only two traffic lanes and he traveled in the one nearest the median and that he went straight ahead when he reached the intersection. He further said "if there was three lanes there, I didn't see it."

By interrogatories and answers thereto, it is shown in the record that Seldon's contract with the Highway Department called for partial modification or removal of the esplanade located on the south side of the intersection of Loop 323 and U. S. Highway 271, and that Seldon's employees removed the northern portion of the esplanade on February 4, 1969. There is no direct evidence that Seldon's employees erected a two foot embankment of dirt on the esplanade, and that fact would have to be established, if it is, by circumstances.

The record is silent that Seldon did any work or made any excavation or otherwise changed the intersection except the partial modification or removal of the northern portion of the esplanade located on the south side of the intersection. A reasonable conclusion that may be drawn from the record here is that Green drove into a two-foot dirt embankment which was located at or on the esplanade or median and not at or on any traveled part of the highway at the intersection. Green insisted that he drove next to the concrete median, and he also testified he went straight across the intersection. If he also followed the median into the left turn lane at the intersection, he would likely have hit the median or esplanade or whatever was on it on the south side of the intersection if he had gone "straight across the intersection." He testified, as shown above, that he could not have collided with anything had he been in either of the straight-ahead lanes as he crossed the intersection.

■ Subdivision 9a of Art. 1995, V.A. T.S. provides that a suit based upon negligence may be brought in a county other than defendant's residence and in the county where the act or omission of negligence occurred when the plaintiff establishes by a preponderance of the evidence that an act or omission of negligence occurred in the county where suit is filed and that such negligence was a proximate cause of plaintiff's injuries. Seldon contends that Green failed to prove by a preponderance of the evidence that Seldon was guilty of any act or omission in Smith County which was negligence and was a proximate cause of the collision and injuries. We sustain this point.

■ It is without dispute that a highway contractor performing work on a public highway is under a duty to exercise ordinary care to protect persons using the highway. Strakos v. Gehring, 360 S.W.2d 787, 795–796 (Tex.1962); Reynolds-Land, Inc. v. Raleigh, 435 S.W.2d 255 (Tex.Civ. App.–Texarkana, 1968, n. w. h.)

■ The duty owed to travelers upon a public highway by a contractor doing construction thereon is set out in Strakos v. Gehring, supra, as follows:

"The law places a duty to warn of dangerous conditions on a public highway upon one who creates such condi-

tions or who is in control of the area and permits such conditions to persist."

The first inquiry, under this rule, is whether the proof shows by a preponderance of the evidence that Seldon created a dangerous condition. The only evidence in the record concerning what work was done by Seldon at the intersection was that he made a partial modification of the esplanade or island or median on the south side of the intersection. There is no evidence how the work was performed on the island or median or esplanade. There is no evidence that Seldon's employees left any embankment of dirt or other condition at the place where Green's vehicle was in collision. The record is silent concerning any work or excavation or change in either of the lanes used by traffic for continuing south and traveling straight across the intersection—the direction Green testified he intended to go. Obviously, there was no dangerous condition, under the record here, for traffic continuing through the intersection on either of the through lanes. From the record it appears that the two foot embankment which Green drove into must have been at or on the median or island and Green collided with it by driving straight across the intersection from the left turn lane. There is no evidence in the record that the condition of the median or island, as a result of Seldon's work, was more dangerous than it was prior to any work being done on it by Seldon. There is no evidence as to the condition or appearance of the island before Seldon did any work on it. There is nothing in the record to reveal whether Seldon's work on the north end of the median was done by hand, or by machine, or whether any dirt was moved in doing the work. The record does not disclose who actually placed the dirt embankment, or how it was done, or how long it had been so placed.

■ We believe that Green failed to prove by a preponderance of the evidence that Seldon created a dangerous condition or that there was a dangerous condition under his control which he permitted to exist. It follows that, under this record, Seldon was not under a duty to warn the traveling public of any dangerous condition and, therefore, he has not shown by a preponderance of the evidence to be guilty of an act or omission constituting negligence in Smith County and a proximate cause of the Greens' injuries.

■ The right of a defendant to be sued in the county of his residence is a valuable right and he may not be deprived of such right unless the litigation against him clearly comes within one of the exceptions to the venue statute. Reynolds & Huff v. White, 378 S.W.2d 923 (Tex.Civ. App.–Tyler, 1964, n. w. h.). Unless the plaintiff clearly discharges his burden of proof, the defendant is entitled to a transfer of the case. Admiral Motor Hotel of Texas, Inc. v. Community Inns of America, Inc., 389 S.W.2d 694 (Tex.Civ.App.– Tyler, 1965, n. w. h.). Venue may not be established by implication. The occurrence of an accident is not evidence of negligence. Calhoun v. Padgett, 409 S.W.2d 890 (Tex.Civ.App.–Tyler, 1966, n. w. h.); Reynolds & Huff v. White, supra.

■ An equal doubt between an exception to the venue rule is to be resolved in favor of the rule and the application of the exception must clearly appear. Goodrich v. Superior Oil Co., 150 Tex. 159, 237 S. W.2d 969 (1951).

It appears from the record that Green has shown only that Seldon had the opportunity to create the two foot dirt embankment which Green drove into. We believe Green has failed in discharging his burden, and that the valuable right to be sued in one's own county outweighs the fact that Green had an accident in an area where Seldon only had the opportunity to create such condition but has not been shown by a preponderance of the evidence to have done so.

Appellant's other points are not reached.

Judgment of the trial court is reversed and the case is ordered transferred to the District Court of Bexar County.