Lupe **RESENDEZ**, Appellant,

v.

**LYNTEGAR ELECTRIC COOPERATIVE, INC.,** Appellee.

**No. 8464.**

Court of Civil Appeals of Texas, Amarillo.

May 28, 1974.

Evans, Pharr, Trout & Jones, W. Hollis Webb, Jr., Lubbock, for appellant.

Tony Dirksmeyer, Dallas, for appellee.

REYNOLDS, Justice.

Presented is the question of proper venue for the trial of this wrongful death action. Lupe Resendez, the surviving widow of Enrique Resendez, deceased, filed this suit in Hockley County, seeking damages for herself and in behalf of others from Lyntegar Electric Cooperative, Inc., for its alleged negligence committed in Hockley County proximately causing the death of the deceased. Controverting defendant's plea of privilege for removal of the suit to its domiciliary County of Lynn, plaintiff asserted venue was properly laid in Hockley County under subdivision 9a of the general venue statute, Vernon's Ann. Civ.St. art. 1995. Following the venue hearing, the court, without filing findings of fact and conclusions of law, sustained the plea of privilege and ordered the cause transferred to Lynn County. We affirm.

Implicit in the court's order is the finding that plaintiff, although having pleaded various acts of negligence on the part of defendant, did not prove by a preponderance of the evidence that defendant committed in Hockley County any of such alleged acts of negligence that was a proximate cause of the death of Enrique Resendez. Plaintiff's ten-point attack on the court's finding necessitates that the evi-

dence be reviewed with deference to the established principles governing venue.

■ In enacting the general venue statute, V.A.C.S. art. 1995, the legislature determined to statutorily bestow upon the defendant the valuable right to be sued in his home county subject only to specific enumerated exceptions. These exceptions are strictly construed and must be clearly established before the defendant may be deprived of his statutory right. Kain v. Northland Insurance Company, 472 S.W.2d 304 (Tex.Civ.App.—Amarillo 1971, no writ); National Life Co. v. Rice, 140 Tex. 315, 167 S.W.2d 1021 (1943). Thus, in order to defeat the valuable right bestowed, the plaintiff has the burden not only to plead, but to prove by a preponderance of the evidence that the cause comes within one of the exceptions, and all doubts must be resolved in favor of the general venue rule. Goodrich v. Superior Oil Co., 150 Tex. 159, 237 S.W.2d 969 (1951). And, where the court sits as the trier of the facts and sustains the defendant's claim of his statutory right, as the court did here, the plaintiff, to effect a reversal, must demonstrate that the venue evidence is conclusive of plaintiff's right to maintain the suit in the county where it is filed under an exception to general venue. Andrew v. Economy Furniture Company, 471 S.W.2d 433 (Tex.Civ.App.—Fort Worth 1971, no writ).

■ So, here, plaintiff, having failed to convince the trial court that sufficient venue facts were proved to invoke exception 9a, must now demonstrate that the venue evidence established as a matter of law that defendant was guilty of negligence in Hockley County which proximately caused the wrongful death of Enrique Resendez, McGough v. Massey-Ferguson, Inc., 384 S.W.2d 154 (Tex.Civ.App.—Eastland 1964, writ dism'd); otherwise, absent filed findings of fact and conclusions of law, it must be presumed that the trial court resolved all fact issues in favor of its judgment. Nelson v. Retco Manufacturing, Inc., 491

S.W.2d 492 (Tex.Civ.App.—Amarillo 1973, no writ). In support of this presumption, credit is given to all evidence sustaining the court's determination of the venue facts and all conflicting and contrary evidence is disregarded. Neuhaus v. Daniels, 430 S.W.2d 906 (Tex.Civ.App.—Amarillo 1968, writ dism'd).

■ Against this background, the evidence is now considered. C. B. Joiner, Fire Chief for the City of Levelland, responding to a call, proceeded to a farm in Hockley County where he found Enrique Resendez lying in a feed field near, and with his feet or his body touching, an irrigation hydrant around which were water and mud. Attached to the hydrant at ground level or above was a two foot long elbow to which was connected a twenty foot long six inch aluminum irrigation pipe in an upright position of a 90° angle to the ground. The side of the pipe was touching an overhead uninsulated electric distribution line, which was owned and maintained by defendant on its easement, and which was designed to carry 7200 volts of electricity. Chief Joiner said the power was still on and that he could see "fire sparking around in the feed." Electricians arrived with hot sticks and pushed the pipe away from the electric line and laid the pipe on the ground. The death of Enrique Resendez was established.

At the time, Chief Joiner did not measure or notice, and at the venue hearing he would not estimate, the distance from the point of contact of the pipe with the line either from the ground or to the top of the twenty-two foot extension of pipe. Upon his arrival, he observed the electric distribution wires, which he said were open and in plain view, and he stated that they were readily apparent to anyone in the area. It was obvious to him that the electric distribution line was directly over the hydrant. He further testified that it was not a safe practice to swing an irrigation pipe 90° in the air or over from one side of the hydrant to the other side, since it was an easy matter to disconnect the pipe on one

side of the hydrant and reconnect it on the other side.

Elmer Tarbox, the employer of Lupe Resendez, testified that some three hours after the report of death, he went to the place where Lupe Resendez told him her husband had been electrocuted. At that place, without any measuring scale, he tried to use the Boy Scout method of a forty-five degree angle projection to estimate the height of the distribution line from the ground. He arrived at the opinion that the height of the line was seventeen feet or under. However, upon specific objections of hearsay and inadmissibility, the court found and ruled that Tarbox's testimony was based upon hearsay and that it was not admissible.

By agreement, the court had judicial notice of the provisions of V.A.C.S. art. 1436a, which adopts the minimum clearance provisions in, and the parties stipulated to the applicability of, the National Electric Safety Code, which specifies that a minimum vertical clearance of eighteen feet above ground is required for the electric distribution line involved here. Defendant acknowledged that it had not attempted to insulate the line. Responsive to plaintiff's interrogatory about what precautionary measures were taken to prevent an electrical accident in the area, defendant replied that in May, 1971, through the Texas Coop Power magazine, it had warned of the hazards and consequences involved in raising objects in close proximity to or into the distribution lines.

It should be noticed that this record is silent as to the status of the deceased on the premises and his reason for being there. If he was employed in irrigation work, there is no evidence of his experience, length of employment or of his familiarity with the premises.

Initially, plaintiff asserts that she proved by the testimony of Tarbox that defendant was negligent per se in maintaining its electric distribution line at a height less than the statutorily required eighteen feet.

Apparently overlooked by plaintiff is the fact that the trial court held this testimony to be inadmissible, to which ruling plaintiff makes no complaint here, and the court obviously did not credit this testimony. There is no other record evidence to establish the vertical clearance of the line at less than eighteen feet above the ground.

Next, plaintiff proposes that the testimony that the power was on and electricity was sparking around the body of the deceased proves that defendant was negligent in failing to have installed and in good working order circuit breakers or other safety devices to break the electrical circuit when the irrigation pipe came in contact with the electric line. The authorities relied on for this proposition are cases in which evidence was introduced to show either a lack of safety devices or that installed safety devices did not work properly, which presented factual issues on negligence to be determined by the trier of the facts rather than matters of law for the court.

Here, no testimony was adduced concerning safety devices. The testimony that the power was on and electricity was sparking, absent any other evidence on the issue, does not conclusively establish that defendant failed to install safety devices in good working order. The mere happening of an accident is no evidence of negligence, which is never presumed. Lamb County Electric Cooperative v. Cockrell, 414 S.W.2d 228 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.). Moreover, the state of the record, particularly since the status of the deceased on the premises was not shown, would support the court's finding that plaintiff did not prove by a preponderance of the evidence that defendant was under a duty to install safety devices.

The acknowledgment by defendant that it had not attempted to insulate the distribution line is claimed to establish negligence. Two cases are cited in support of the claim. In one, the court held that there was a duty to insulate where the

electric wires were maintained in violation of the statutory minimum height from the ground; in the other, where both the establishment of this statutory violation and common law negligence as to height was affirmed, the court held that whether the lack of proper insulation was negligence was properly an issue of fact. Here, no violation of the statutory height requirement was established, and the issue of whether the lack of insulation was negligence under the circumstances became one of fact. If the court found the fact contrary to plaintiff's contention, we cannot hold as a matter of law that the evidence conclusively established the converse.

Finally, plaintiff submits that defendant's failure to warn the deceased that the overhead line was dangerous or to bury the line underground was negligence. Other than the evidence of the warning defendant published in the magazine and the fact that the distribution line was not buried underground, no evidence, except the occurrence itself, bears on the issue. As previously noted, negligence is never presumed, and the happening of an accident is no evidence of negligence. Therefore, we cannot hold as a matter of law that the trial court erred in finding, if it did, that plaintiff failed in the circumstances presented to prove by a preponderance of the evidence the existence of defendant's duty to either warn of the danger of the line or to bury it beneath the ground.

Both parties agree, citing Biggers v. Continental Bus System, Inc., 157 Tex. 351, 303 S.W.2d 359 (1957), as authority, that proximate cause consists of the two elements of foreseeability and causation. Applied to the factual situation confronting the trial court, it may be, irrespective of what we have said heretofore on the issues of negligence, that the court found, without filing findings stating, that defendant had committed in Hockley County one or more of the acts of negligence alleged; but, if so, the court then determined that plaintiff's evidence did not preponderate in favor of a finding that defendant reasonably could have foreseen that the deceased, contrary to the evidence of safe practices, would swing the irrigation pipe into the air toward an open and obvious overhead, uninsulated electric distribution line. In that event, we are not able to declare that the evidence conclusively establishes a different finding.

In brief, plaintiff's evidence does not conclusively defeat defendant's right to be sued in its home county. Plaintiff's ten points of error are overruled.

The judgment is affirmed.