**GENERAL MOTORS CORPORATION,
Appellant,**

v.

**W. B. EWING, Appellee.**

**No. 3456.**

Court of Civil Appeals of Texas.

Waco.

March 28, 1957.

Rehearing Denied April 18, 1957.

Carrington, Gowan, Johnson, Bromberg & Leeds, Joe H. McCracken, III, Dallas, for appellant.

Enoch G. Fletcher, Grand Saline, for appellee.

TIREY, Justice.

This is a plea of privilege case (nonjury). There was no request for findings of fact and conclusions of law and none filed. Plaintiff went to trial on his original petition and his controverting affidavit. The pertinent parts of plaintiff's petition

are that in February 1955 he purchased from the Ross Love Motor Company (not a defendant here), an agent and dealer for defendant, a 1955 model, two door Buick automobile; that defendant is engaged in the manufacture of automobiles which it sells to the public through its dealers; that the car purchased by plaintiff had been manufactured by defendant and at the time of delivery of this car to the plaintiff its agent delivered to the plaintiff one of defendant's standard warranties, which warranted that there were no defective parts in the automobile; that by the manufacture and sale of such car there was an implied warranty on the part of defendant that there were no defective parts and that said car was all that it outwardly appeared to be; that the Ross Love Motor Company was at said time located at Grand Saline in Van Zandt County, and that the purchase was made at Grand Saline, Texas; that about ten days after the purchase of this car and within the time of the warranty the car developed a terrible noise; that plaintiff immediately carried the car back to the Ross Love Motor Company and advised such company of the defect in said automobile; that the Ross Love Motor Company advised defendant at once of the defect in said car, and thereafter there began a course of correspondence between plaintiff and defendant which has continued for some time; that plaintiff contacted the defendant at least a dozen times since he discovered the defect and each time the defendant, through its agents and employees, promised to fix the car, but that defendant failed to do so; that such car is in the defective condition that it was in when plaintiff bought it; that such defect was a hidden one and could not have been discovered when plaintiff bought the car. He specifically set out his damages and prayed that he recover the amount of $2,725.

Defendant seasonably filed its plea of privilege, setting up that it was a foreign corporation and had its principal place of business in Dallas, Dallas County, Texas;

said plea being in compliance with Rule 86, Texas Rules of Civil Procedure.

Plaintiff duly filed his controverting affidavit to the plea of privilege and the pertinent parts thereof are:

"In controverting the defendant's plea of privilege filed herein, this affiant says that the plaintiff has filed a petition in this cause, copy of which has been duly served on the defendant. Affiant hereby makes said petition a part of this plea, the same as if written herein, and says under oath that every allegation in the petition is true. Affiant further says that said petition shows that the defendant is a private corporation and that the cause of action, and especially a part of it, arose in Van Zandt County, Texas; that because at least a part of the cause of action arose in Van Zandt County, Texas, this court has venue to try said suit."

Plaintiff prayed that the plea of privilege be overruled.

Defendant filed its exceptions to the plaintiff's controverting affidavit, and the pertinent part of said exception is:

"Defendant specially excepts to plaintiff's controverting plea filed herein in its entirety because it is insufficient as a matter of law in that it fails to set out any facts controverting or intending to controvert the plea of privilege filed herein by this defendant and specifically it does not set out venue facts relied upon by the plaintiff to confer venue upon this court where the suit is now pending."

Defendant prayed that such exception be sustained and for general relief. (The record fails to show any order entered on this exception.)

The court proceeded to hear the cause on the 21st of September 1956 and thereafter, on October 13, 1956, entered its order overruling defendant's plea of privilege.

Defendant assails the order on one point containing five subheads. We state them substantially: (1) The court erred in overruling its plea of privilege because the evidence failed to prove a cause of action (a) by a preponderance of the evidence and also failed to prove a prima facie case; (b) failed to show compliance with the provisions of the manufacturer's warranty; (c) the terms and provisions of the manufacturer's warranty expressly state that it is in lieu of all other warranties, express or implied; (d) plaintiff is not in privity of contract with the appellant and therefore cannot show a cause of action on implied warranty; (e) failed to prove a breach of any duty owed by defendant to the plaintiff.

The pertinent parts of the warranty referred to are:

"It is expressly agreed that there are no warranties, express or implied, made by either the Dealer or the Manufacturer on the Buick motor vehicles, chassis or parts furnished hereunder, except the Manufacturer's warranty against defective materials or workmanship as follows:

" 'The Manufacturer warrants each new motor vehicle, including all equipment or accessories (except tires) supplied by the Manufacturer, chassis or part manufactured by it to be free from defects in material and workmanship under normal use and service, its obligation under this warranty being limited to making good at its factory any part or parts thereof which shall, within ninety (90) days after delivery of such vehicle to the original purchaser or before such vehicle has been driven 4,000 miles, whichever event shall first occur, be returned to it with transportation charges prepaid and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, expressed or implied, and it neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of its vehicles.

" 'This warranty shall not apply to any vehicle which shall have been repaired or altered outside of an Authorized Buick Service Station in any way so as in the judgment of the Manufacturer to affect its stability and reliability, nor which has been subject to misuse, negligence or accident.' "

Plaintiff testified to the effect that in February 1955 he purchased the Buick car in question from the Ross Love Motor Company; that the sale price was $3,285 and that $2,000 thereof was in trade; that after he had driven the car some 500 miles and within ten days of the purchase, he noticed a singing noise in the motor; that he took it back to Ross Love Motor Company and told them about his trouble and they undertook to fix it and he took it back several times, but the car was still giving him the same trouble; that thereafter he wrote the defendant and on January 31, 1956 he had a letter from the Buick Motor Division of General Motors Corporation addressed to him, the pertinent part thereof being:

"Your letter of January 26 concerning your 1955 Buick has been furnished to the Buick zone office at Dallas for their information.

"The zone office is in a position to advise you in regard to any matters pertaining to your car since they have jurisdiction for Buick in that area.

"You should hear further from the zone office within a short while."

Thereafter, on February 2, 1956, the Buick Motor Division of General Motors Corporation of Dallas wrote plaintiff as follows:

"This will acknowledge receipt of your letter dated January 26, 1956, which has been forwarded by our central office inasmuch as we are responsible for service in this area.

"We regret that it was necessary for you to write as you did regarding your 1955 Buick. In order to assist you we are taking the liberty of forwarding a copy of your letter to our dealer, Ross Love Motor Company, asking them to inspect your automobile and submit their report to this office, inasmuch as we are guided by our dealer's report. It is, therefore, requested that you release your automobile to the dealer for an inspection as soon as possible."

James H. Henry testified substantially to the effect that he was Service Representative of the Buick Motor Division of General Motors, and that Van Zandt County, Texas is a part of his district; that he was acquainted with Ross Love Motor Company, and that Ross Love was the authorized dealer for the Buick Motor Division in Grand Saline, Van Zandt County, Texas, in December 1955.

"Q. What is your duty as service representative? A. We have many duties, sir, product protective being one of them.

"Q. That is, if I understand it, if there is a defect or something wrong with a new automobile, that is part of your duty to check the trouble, is that right? A. If the dealers require our help, yes, sir.

"Q. Now, I will ask you this, when trouble develops in a new car, after it is first sold, what is the custom of the Buick Division of General Motors, as to who first checks that trouble? A. Usually the dealer.

"Q. The man who sold it, you mean? A. Not necessarily the man that sold it.

"Q. But some authorized dealer? A. That is right.

"Q. And isn't it a practice of your company to have that car returned by the customer to some authorized dealer? A. Yes.

"Q. When a defect appears in a new automobile, to have the customer take that car to some of your authorized dealers to be checked? A. Yes."

Ross Love testified to the effect that he had been the authorized Buick agent in Grand Saline in Van Zandt County for six years; that he sold the car in question to plaintiff; that after he sold the car to plaintiff that plaintiff brought it back to him and that the car had a noise in the rear end; that he checked the car and found that it did have such noise and that they purported to fix it. This witness identified the record in his shop showing that they had paid to Bob Wray Buick Company of Tyler a bill for replacing ring gear and pinion in plaintiff's car. He also identified a repair bill from Ross Love Motor Company dated June 27, 1955 for replacing ring gear and pinion, including all bearings on the car and he said those repairs were made in his shop. He also identified another invoice dated March 3, 1956, which covered the replacement of ring gear pinion and bearings in plaintiff's car and said this repair work was done in his shop, at which time the mileage on the car was shown to be 8,648 miles. He identified another invoice dated June 27, 1955, at which time the mileage was shown to be 3,125 miles, showing repair bill for work done on plaintiff's car of replacing ring gear and pinion, including all bearings, at a cost of $44.90. He identified another invoice of February 14, 1956, for service on plaintiff's car. This was for installation of a harmonic balancer, and the speedometer at that time registered 12,350 miles. He further testified that when he sold the car he delivered to plaintiff a guide book furnished by the Buick Company to every purchaser of a new car; that he had checked all of the equipment when he made the car ready for delivery, and that he made sure that this manual was in the car before he turned it over to the purchaser. This book contained the manufacturer's warranty, the pertinent parts of which have been heretofore quoted. Mr. Love identified the dealer's selling agreement between the buyer and the dealer of the General Motors Corporation. This

agreement was signed "Buick Motor Division" by Alfred H. Belford, General Sales Manager, and H. A. Kemp, Zone Manager, and Ross Love, owner of Ross Love Motor Company; that under the terms of the contract he purchases and receives his cars through the Zone Office in Dallas; that paragraph 29 of said selling agreement provides in part: "Dealer is not granted any express or implied right or authority to assume or to create any obligation or responsibility in behalf of or in the name of seller, or to bind seller in any manner or things whatsoever."

■ Our view of the record is that the testimony fails to show that the defendant had any dealings or transactions with the plaintiff as regards the sale of the Buick car; plaintiff made his purchase from an independent automobile dealer. It seems to us that the dealer is in no way connected with defendant other than being in a position to resell the automobiles it buys from defendant. The warranty tendered in evidence does not bind defendant that it itself will repair any of its automobiles, but on the contrary it expressly warrants that it will only replace parts found to be defective within the time limit prescribed. We do not think the evidence shows that defendant failed to carry out any obligation that it owed to plaintiff. The most that can be expected of defendant under the warranty is that it must comply with the terms of its expressed warranty and replace parts found to be defective. We have considered very carefully all of the evidence tendered and it is our view that plaintiff has not proved a cause of action against defendant by a preponderance of the evidence. We also think that plaintiff has failed to show any act or omission on the part of defendant that was a breach of any duty that defendant owed to plaintiff. Such failure brings the plaintiff's cause of action within the pronouncements of Stull's Chemicals, Inc.,

v. Davis, Tex.Civ.App.Dallas, 263 S.W.2d 806, point 5, at page 808, (no writ history).

■ Although plaintiff did not specifically allege that venue was laid in Van Zandt County under subdivisions 23 and 27, Art. 1995, Vernon's Ann.Civ.St., yet his controverting affidavit did specifically allege "that because at least a part of the cause of action arose in Van Zandt County, Texas, this court has venue to try said suit." Much has been written on subdivisions 23 and 27 of our venue statute and it is now well settled that for plaintiff to sustain venue in the county where the cause of action or a part thereof arose, the plaintiff must prove that he has a cause of action against the defendant by a preponderance of the evidence. See Compton v. Elliott, Tex.Com. App., 88 S.W.2d 91; Rogers v. Ft. Worth Poultry & Egg Co., Tex.Civ.App., 185 S.W. 2d 165 (no writ history); Texas Mutual Reserve Life Ins. Co. v. Ormand, Tex.Civ. App., 115 S.W.2d 776 (no writ history). The foregoing cases are clear and comprehensive and further discussion of the principle there announced would be of no avail.

In view of the fact that this cause will have to be tried on its merits, we feel that we should not comment further on the testimony tendered, nor appellant's points of error.

Believing that plaintiff failed to show that he was entitled to maintain his alleged cause of action in Van Zandt County, as against defendant's plea of privilege, the judgment of the trial court overruling the plea of privilege is reversed and rendered and the cause is hereby transferred to one of the district courts of Dallas County, Texas, pursuant to Rule 89, T.R.C.P. See Thomas v. Meyer, Tex.Civ.App., 168 S.W. 2d 681 (no writ history).

Reversed and rendered.