**FORD MOTOR COMPANY, Appellant,**

**v.**

**Dale E. GRIMES, Appellee.**

**No. 4103.**

Court of Civil Appeals of Texas.

Eastland.

Oct. 21, 1966.

Rehearing Denied Nov. 18, 1966.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Jones, Fillmore, Robinson & Lambert, Wichita Falls, for appellee.

WALTER, Justice.

This is a venue case. Dale E. Grimes filed suit in Knox County against Ford Motor Company and Lankford Motor Company for damages to his Ford automobile caused by fire. The car was manufactured by Ford and sold to Grimes by Lankford. Plaintiff alleged specific acts of negligence, breach of express and implied warranty and res ipsa loquitur. Ford's plea of privilege was overruled and it has appealed.

In Grimes' controverting affidavit he alleged that subdivisions 4, 23, 27 and 9a of Article 1995 applied.

Ford contends the court erred in overruling its plea of privilege because Grimes failed to sustain its burden of proof that such subdivisions were applicable. Appellee has abandoned his allegations under 9a, but contends the judgment is correct under the other subdivisions.

The appellee Grimes testified substantially as follows: I purchased a new Ford from Lankford in Knox County on February 11, 1964. I then left Knox City and drove to Benjamin, which is a distance of about ten miles. I then drove to the Todd ranch which is about 14 miles north of Benjamin. When I left Knox City I noticed an odor in the car which I considered as a new car smell. I never drove over 45 miles per hour. The car was represented to me as being a new car. While driving from Benjamin to the Todd ranch I noticed that the odor became stronger. I noticed that the odor seemed to be coming from the motor and smelled as though the insulation on wires was burning. We left the Todd ranch about 10:30 that night and drove to Mr. Carter's home. The same odor persisted and seemed to be getting stronger. After I had traveled about five miles, I noticed that my right leg was getting pretty warm.

I felt under the dash on the right hand side and found that it was very hot. I burned my hand under the dash. The heat became more intense and I thought that I could see a flame and I crammed my jacket up under it and when I did I ran into the bar-ditch. I then saw a flame under the hood on the right hand side of the motor. From what I could see it appeared to be the battery and the wiring on the right hand side. I trotted and walked home, got a fire extinguisher and returned in my truck. By that time I couldn't get close enough to the car to use the fire extinguisher because of the heat. I returned home and called Lankford and told him what happened, and he sent a wrecker out the next morning. I have owned and operated automobiles for about 32 years. The car was burned beyond repair.

Charles Lankford testified substantially as follows: My partner and I own and operate the Lankford Motor Company in Knox City. I purchased the Ford that I sold to Mr. Grimes from Ford Motor Company. It was a new XL Ford 500. The car was built on the 30th of January in Dallas and we get them one or two days after they are built, by auto convoy. I saw the car after it was burned and I would estimate its cash market value at about six hundred dollars. The reasonable cash market value of the car before the fire was around $3,250.00. We have a franchise with Ford and operate as a dealer in Knox City. When asked, "Just briefly, Mr. Lankford. If this car overheated and flamed up under the hood and under the dash as you heard Mr. Grimes here so testify, as a dealer in these cars, an experienced man in handling them and supervising the inspection, would you say there was something wrong with the car?", he answered "Well, I would say something caused the fire, yes sir."

The following questions were asked Ford Motor Company and it gave the following answers under Rule 168 of Texas Rules of Civil Procedure.

"Q. Does Ford Motor Company advertise through public media such as television, radio, magazines, newspapers, bulletins, circulars, exhibits that Ford automobiles are safe from the standpoint of manufacture and/or assembly and/or testing and/or inspection for use by the general public?"

"A. No, in the sense of advertisements directed exclusively to the question of 'safety'. All improvements in the performance of the product and all engineering advancement, in a sense, have to do with safety, and in the Ford Motor Company advertising, some of the outstanding safety features of the automobile are listed frequently. No advertisements directed simply to the feature of 'safety' are made."

Grimes pleaded that Ford impliedly warranted that the automobile was properly manufactured, assembled, tested and inspected and was fit for the purposes for which it was sold; that such implied warranty continues with the car into the hands of the initial retail purchaser, and that Ford had breached the warranty.

■ Subdivision 27 of Article 1995 provides that foreign corporations may be sued in any county where the cause of action or a part thereof accrued. We hold that Grimes discharged his burden of proving by a preponderance of the evidence the venue facts under subdivision 27 and affirm the judgment.

In Putnam v. Erie City Manufacturing Company, 5 Cir., 338 F.2d 911, the court said:

"Jacob E. Decker & Sons, Inc. v. Capps, 1942, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479, a case of national importance, firmly settled the law of Texas that in a food case privity of contract is not a prerequisite to recovery for breach of a manufacturer's warranty of fitness for human consumption; the warranty is implied by law as a matter of public policy. But the Supreme Court of Texas had not committed itself to a position on the necessity for privity as a prerequisite to recovery in non-food cases. In the case before the court the defective product is a wheel chair. Making an Erie [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] educated guess, we hold: Today, the Supreme Court of Texas would follow Decker to its logical conclusion and rule that a manufacturer or assembler of a defective product unreasonably dangerous to the user, is subject to strict liability to the user for an injury caused by the defect, even though the product is not a food for human consumption, there is no proof of negligence, and there is no privity between the user and the manufacturer or assembler."

■ We think that justice requires that the manufacturer be charged with an implied warranty in favor of the initial retail purchaser that the automobile was suitable for the purposes for which it was sold. The evidence discloses more than an unexplained fire. Soon after Grimes purchased this new car, he began to smell smoke from burning insulation. Within approximately six or eight hours and fifty miles after the new car was delivered to him it was destroyed by fire. The fire was in the front and, "it appeared to be the battery and the wiring on the right hand side." Lankford testified, in effect, that there was something wrong with the car.

We hold that the court was also warranted in overruling the plea of privilege under subdivisions 4 and 23.

The judgment is affirmed.