**JOHN DEERE COMPANY OF KANSAS CITY, Appellant,**

v.

**Kenneth TENBERG, Appellee.**

**No. 7071.**

Court of Civil Appeals of Texas.

Beaumont.

Sept. 4, 1969.

James E. Coleman, Jr., Dallas, for appellant.

James E. Cross, Yoakum, Houston Munson, Gonzales, for appellee.

PARKER, Justice.

Kenneth Tenberg, a resident of Lavaca County, Texas, sued John F. Hajek, a resident of Lavaca County, Texas, and John Deere Company of Kansas City, a Missouri corporation with an office and place of business at Dallas, Dallas County, Texas, jointly and severally, to recover the purchase price of a tractor sold to plaintiff in Lavaca County, Texas by the defendant, Hajek, tendering the tractor to Hajek. In the alternative, plaintiff sought damages for consequential economic loss by reason of having to secure other equipment to do his farm work when the tractor purchased was being repaired. The District Court of Lavaca County, Texas overruled the plea of privilege of John Deere Company of Kansas City, and hence this appeal.

Appellant has two points of error:

## "POINT ONE

"The trial court erred in overruling appellant's plea of privilege since appellee failed to establish a cause of action against the resident defendant, Hajek, as required by subdivision 4 of art. 1995, V.A.T.S.

## "POINT TWO

"The trial court erred in overruling appellant's plea of privilege in that appellee failed to prove that a cause of action, or a part thereof, arose or accrued in Lavaca County, Texas, as requried by subdivisions 27 and 23 of art. 1995, V.A.T.S."

Tenberg sought to rescind the purchase of the tractor on the basis that by selling and delivering said tractor, the defendants then and there warranted the said John Deere tractor to be new, in perfect condition, and in all respects fit and proper for use in farm operations, and that he purchased said tractor and equipment, relying on such representations of warranty, for $5,390.00, including the value of a John Deere tractor traded in. In the alternative, Tenberg sought to recover consequential damages mentioned above.

On October 30, 1965 (before the Uniform Commercial Code became effective), Tenberg purchased from Hajek Implement Company a 1010 John Deere diesel tractor. Prior thereto, Tenberg had read advertisements in various publications of the fitness of John Deere tractors to perform certain farm work. He testified he relied upon these representations and that the tractor did not live up to the advertisements. All of such representations by advertising were read by Tenberg long prior to the purchase of the tractor. This testimony as to advertising is not in accord with his petition. At the time of the purchase and sale, Tenberg and Hajek, the only two parties involved in the sale, signed a written agreement, certain portions of that agreement are as follows:

"I (we) [Tenberg] understand and agree that in selling the goods covered by this order you [Hajek] are not acting as agent of the manufacturer or of any wholesale distributor of the manufacturer [John Deere] but that you are an

independent dealer and have sold the goods for your own account as such.

"Seller [Hajek] warrants each new John Deere machine to be free from defects in materials or workmanship. The obligation of Seller under this warranty is limited to replacing parts which prove defective with normal and proper use within the warranty period. The warranty period is: (1) For all John Deere machines, except John Deere Lawn and Garden Tractors and John Deere attachments therefor, 12 months from delivery to purchaser or 1500 hours of use, whichever occurs first, * * *

"It will be the responsibility of the purchaser [Tenberg] to deliver machine to Seller's service shop, or if this is not possible, to reimburse Seller for any travel or transportation expense involved in fulfilling this warranty.

"The above warranty is in lieu of all other warranties, statutory or otherwise, expressed or implied, all other representations to Purchaser, and all other obligations or liabilities with respect to such machines including implied warranties of merchantability and fitness, and Seller's obligation under all such warranties shall not exceed those set out above. No warranty or representation whatsoever, expressed or implied, has been made by the manufacturer or wholesale distributor of John Deere machines [John Deere] and relied on by Purchaser, and Seller has no authority to make any such warranty or representation on behalf of such manufacturer or wholesale distributor. In no event shall Seller be liable for incidental or consequential damages or injuries including loss of crops or inconvenience or loss in performing contracts.

\* \* \* \* \* \*

"No assistance given to Purchaser by Seller or anyone acting with him in the repair or operation of the goods shall constitute a waiver on the part of Seller of the conditions of this Warranty and Agreement."

The execution of the agreement by the parties thereto is not contested. There is nothing in this agreement that warrants or represents that the tractor is fit to do any particular work. Tenberg seeks to rescind a sale. The contract of sale is in writing. To rescind this contract in writing, the burden is on Tenberg to place it in evidence and prove that under its terms he is entitled to rescind. This he failed to do.

Tenberg testified there had never been a refusal on the part of Hajek to perform the terms of the agreement up until the time he filed this suit on October 26, 1967. There was no proof nor any attempt by appellee to prove that a specific part was defective and not replaced, that Hajek refused to replace a defective part, or the value of any alleged defective parts. He had no dealings with any agent or representative of John Deere Company prior to the date he purchased the tractor from Hajek. The latter was a dealer but not an agent of John Deere Company. The tractor was used over 1200 hours, was repaired many times, with parts replaced, including replacing the engine head. At one time the tractor was being repaired over a period of four months.

There is no proof that John Deere Company ever had or maintained an agency in Lavaca County, Texas.

In his controverting plea, Tenberg relied upon subdivisions 4, 23 and 27 of Article 1995, Revised Civil Statutes of the State of Texas.

 Tenberg alleged and proved that he and Hajek each were residents of Lavaca County. Tenberg had no cause of action against Hajek, for he purchased the tractor pursuant to a written contract containing limited warranties providing exclusive remedies available to Tenberg. Tenberg cannot rely upon breach of implied warranties because implied warranties were excluded in the written instrument signed

and accepted by Tenberg. Eastern Seed Co. v. Pyle, 191 S.W.2d 708 (San Antonio. Tex.Civ.App., 1945); Pyle v. Eastern Seed Co., 145 Tex. 385, 198 S.W.2d 562, 563 (1946); Asgrow Seed Co. v. Gulick, 420 S.W.2d 438 (San Antonio, Tex.Civ.App., 1967, error ref. n. r. e.).

In this case, the seller and the purchaser agreed upon limitations to warranties. In a case of this type, the seller is not bound beyond the terms of his warranty fixed by the written agreement defining the rights and liabilities of Tenberg and Hajek. Logan v. Holland, 25 Tex. 398 (1860); E. F. Elmberg Co. v. Dunlap Hardware Co., 234 S.W. 700, 704 (Amarillo, Tex.Civ.App., 1921), aff'd 267 S.W. 258 (Tex.Com.App., 1924).

The consequential damages sought by Tenberg are excluded by the language of the contract wherein it is stated: "In no event shall Seller be liable for incidental or consequential damages or injuries including loss of crops or inconvenience or loss in performing contracts."

Likewise, the provisions of the contract applied to this record show no cause of action by Tenberg against Hajek or John Deere Company.

Each of appellant's points of error is sustained. The judgment and order of the District Court of Lavaca County, Texas, overruling the plea of privilege of John Deere Company of Kansas City, is reversed and it is here adjudged and ordered that this cause as to John Deere Company of Kansas City be transferred by the District Court of Lavaca County, Texas to the District Court of Dallas County, Texas.

STEPHENSON, Justice (dissenting).

I respectfully dissent. Plaintiff plead and proved a cause of action against defendant, John Deere Company of Kansas City, and the judgment of the trial court overruling its plea of privilege should be affirmed.

Defendant, John Deere Company, impliedly warranted that its tractor was reasonably fit for the purpose for which it was sold.

Plaintiff's pleadings, in substance, were: That by selling their tractor, defendants warranted it to be fit and proper for farm operation. That a series of defects occurred and recurred. That their tractor had never been in condition to perform the ordinary tasks of a farm tractor. That it is totally unfit to serve as a farm tractor. That plaintiff should recover as damages, the purchase price paid for the tractor and for $1,154.50 plaintiff paid others to do tractor work on his farm because this tractor did not perform.

In his controverting affidavit plaintiff alleged: That defendant, John Deere Company, had published and distributed brochures and advertisements which he read, and radio, television and newspaper advertisements, which all represented the tractor he bought had sufficient power to do farm plowing and other farm work. That plaintiff relied upon these representations that he had heard and read before he purchased this tractor.

On a hearing of their plea of privilege, plaintiff offered evidence, which was not contradicted, to prove all of the above allegations. This was all that he was required to do. John Deere Company does not contend, either in its pleadings in the trial court or its brief in this court, that it did not manufacture this tractor which plaintiff purchased. The attorney representing John Deere Company, during the course of the hearing of this plea of privilege, admitted the defendant, Hajek, was an authorized dealer for defendant, and that plaintiff bought this tractor from Hajek. This attorney did not deny to the court that the ad appearing in the Progressive Farmer was that of the John Deere Company, and stated, "I can only assume it is." The John Deere trademark and emblem are identified without question. It was agreed the Furrow Magazine was defendant's; and that the John Deere Company Operation Manual was delivered to plaintiff at the time of this purchase. Plaintiff testi-

fied in detail as to his dealings with John Deere Company, including his telephone calls and correspondence with persons admitted to be employees of John Deere Company.

I do not agree with the statement in the majority opinion that this was an action to rescind a contract. The "Purchase Order" defendants offered in evidence was not a contract in the usual sense of the word. None of the terms were executory. This was a cash sale, and the "Purchase Order" was more in the nature of a receipt. In any event, the defendant, John Deere Company, was not a party to the "Purchase Order", if it should be construed as a contract. Plaintiff and defendant, John F. Hajek, d/b/a Hajek Implement Co., were the only parties named, and Hajek did not purport to act as agent for John Deere Company in signing the "Purchase Order".

This is an action upon an implied warranty as to fitness of a product, and not an action on a contract. It is an action for damages, first to recover the purchase price paid, and second to recover economic damages suffered, because the tractor would not plow.

This court should not determine the question of liability in this venue action. The "Purchase Order", may be a defense when this case is heard on its merits, but that is the time for the trial court to decide whether or not the "Purchase Order" is a valid defense, and whether or not a 19-year-old boy was bound by its terms.

I am convinced that it is good law for a plaintiff consumer to be able to recover directly from the manufacturer when a product is not reasonably fit for the purpose for which it was sold, because a plaintiff is realistically dealing with a maker who normally markets under trade name and advertises nationally. The manufacturer, rather than the retailer, controls the quality and fitness of the product, and through his advertising, is frequently the moving force, inducing the purchaser to enter into the transaction.

In Santor v. A and M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305, 16 A.L.R.3d 670 (1965), this statement is made:

> "The manufacturer is the father of the transaction. He makes the article and puts it in the channels of trade for sale to the public. No one questions the justice of a rule which holds him liable for defects arising out of the design or manufacture, or other causes while the product is under his control. After completion the article may pass through a series of hands, such as distributor and wholesaler, before reaching the dealer at the point of ultimate intended sale. The dealer is simply a way station, a conduit on its trip from manufacturer to consumer. For these reasons in the recent past the courts of many jurisdictions, in an endeavor to achieve justice for the ultimate consumer, have imposed an implied warranty of reasonable fitness on the person responsible for the existence of the article and the origin of the marketing process."

The case, Ford Motor Company v. Grimes, 408 S.W.2d 313 (Eastland, Tex. Civ.App., 1966, error dism.), is in point. This is a venue suit, in which the cause of action is brought by the purchaser of a Ford automobile, against the manufacturer and the dealer. The trial court overruled Ford's plea of privilege and the Court of Civil Appeals affirmed. It was held that plaintiff discharged his burden of proof under Subdivision 27, Article 1995, with this statement:

> "We think that justice requires that the manufacturer be charged with an implied warranty in favor of the initial retail purchaser that the automobile was suitable for the purposes for which it was sold."

KEITH, Justice (concurring).

In concurring in the disposition of this cause, I can but repeat the old adage known

to all lawyers, "bad facts make bad law." We have an abbreviated record arising out of a venue hearing where the only witness was a young man who had purchased a tractor while a minor, a few years before the hearing. Testifying frequently in answer to leading questions of his counsel, Tenberg established that he bought the tractor from Hajek, a "John Deere dealer" in Lavaca County, paying cash therefor. His testimony was clear that the tractor did not perform satisfactorily despite the efforts of Hajek to make it do the job which Tenberg expected of it. Although a minor at the time of the purchase of the tractor, he did not plead minority as a part of his cause of action.

Two issues of the "Progressive Farmer", a magazine of general circulation devoted to farming, were offered in evidence to indicate the type of advertising which had been made about the tractor model in question. In each instance, the name and address of the manufacturer was given as "John Deere, Moline, Illinois." Two issues of "The Furrow", apparently a promotional type of brochure sent out by the manufacturer of "John Deere" tractors, were also admitted into evidence. The publisher's name and address in each instance is given as "John Deere, Moline, Illinois." A careful examination of an "operator's manual" which Tenberg says he got from Hajek does not indicate who manufactured the tractor. The same is true of a brochure describing the "1010" tractors bearing the trade name of "John Deere."

In his original petition, Tenberg alleged that "The Defendant John Deere Company of Kansas City is a manufacturer and distributor of John Deere tractors, and at some time prior to October 30, 1965 manufactured and delivered to John F. Hajek a

certain John Deere No. 1010 diesel tractor * * *"

While no proof was made of either of the facts so alleged against the appellant (that it was either the manufacturer or distributor of the tractor or that it delivered the same to Hajek), if plaintiff made out a bona fide cause of action against Hajek, the petition itself would be sufficient under Subdivision 4, Article 1995, Vernon's Ann. Civ.St., to hold appellant. Stockyards Nat. Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300, 1302 (1936).

All of the evidence showing Hajek's relationship with the appellant is to be found in this colloquy between appellant's counsel and the court:

"THE COURT: Is there any denial of his [Hajek] being your authorized agent, Mr. Coleman?

"MR. COLEMAN: No denial that Mr. Hajek was a John Deere dealer.

"THE COURT: Had been for several years?

"MR. COLEMAN: Not an authorized agent, but an authorized dealer.

"THE COURT: I meant dealer.

"MR. COLEMAN: We are talking about dealers, and he was a John Deere dealer.

"THE COURT: It will be so stipulated in the record then." [1]

The comments found in General Motors Corp. v. Ewing, 300 S.W.2d 714, 718 (Waco, Tex.Civ.App., 1957, no writ), are appropriate:

"Our view of the record is that the testimony fails to show that the defendant had any dealings or transactions with the plaintiff as regards the sale of the Buick

---

1. The term "dealer" is defined in the Certificate of Title Act, regulating the sale of motor vehicles, Article 1436–1, § 19, V.A.P.C., as "* * * any person purchasing motor vehicles for resale at retail to owners." The tractor in question may or may not have been a "motor vehicle" under the Certificate of Title Act, depending upon its use. Article 1436–1, § 2, V.A.P.C.; Article 6675a–2, §§ (b) and (c), V.A.C.S.

car; plaintiff made his purchase from an independent automobile dealer. It seems to us that the dealer is in no way connected with defendant other than being in a position to resell the automobiles it buys from defendant."

The dissent, p. 43, comments upon the fact that the appellant did not contend that " * * * it did not manufacture this tractor * * *." Appellant had no burden to make *any* contention, one way or the other. The plea of privilege, regular upon its face, placed the burden of proof upon the plaintiff, Tenberg. In Coalson v. Holmes, 111 Tex. 502, 240 S.W. 896 (1922), the court said:

"With the venue challenged, under proper plea, by one sued without his county, as shown by the plaintiff's pleading, or by proof, the burden not only to allege but to prove that the case is within one of the exceptions to the statute rests on the plaintiff."

See also: Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062, 1063, 1064 (1938); Ladner v. Reliance Corp., 156 Tex. 158, 293 S.W.2d 758, 761 (1956); 1 McDonald, Texas Civil Practice (1965 Rev.), § 4.55(b), p. 612; 60 Tex.Jur.2d, Venue, § 204, pp. 53–56.

Tenberg relied upon subdivisions 4, 23, and 27 of Article 1995, V.A.C.S., to overcome the prima facie right of the appellant to be sued in the county of its domicile. Under subdivision 4, it was incumbent upon Tenberg to show by a preponderance of the evidence three venue facts: (a) one defendant, Hajek, resides in the county of suit; (b) the party asserting the plea of

privilege is at least a proper party to the claim against the resident defendant; and (c) the plaintiff has a bona fide claim against the resident defendant. 1 McDonald, Texas Civil Practice (1965 Rev.), § 4.10.2, p. 434, and cases therein cited.

Under subdivisions 23 and 27, Tenberg labored under the burden of establishing a prima facie cause of action against the non-resident corporate defendant. McDonald, supra, § 4.30.2, p. 518, and cases therein cited. Thus, whether or not Tenberg established a cause of action against either defendant becomes of utmost importance; for, until he brought himself clearly within one of the exceptions, he could not maintain venue in Lavaca County against appellant. Goodrich v. Superior Oil Co., 150 Tex. 159, 237 S.W.2d 969, 972 (1951).

As indicated previously, there was no evidence showing or tending to show the nature of the contractual relationship, if any, between appellant and Hajek or the extent of his authority, if any, to act for appellant. Cf. Ford Motor Co. v. Revert, 428 S.W.2d 139 (Amarillo, Tex.Civ.App., 1968, no writ). It was shown, however, that Hajek, a resident of Lavaca County, sold the tractor to Tenberg in Lavaca County, where the suit was brought. Thus, he met *McDonald's* subsection (a), supra, as to subdivision 4 of the statute. Because of the contention of the dissent that the so-called "warranty" quoted in the majority opinion should not be considered because defensive in nature,[2] I turn directly to the claim which Tenberg asserted against Hajek.

So avoiding the tactical maneuver of whether the written instrument between

---

2. I accept without hesitation the rule of law that in the hearing on the plea of privilege the issue for determination is venue, not liability. Stockyards Nat. Bank v. Maples, supra (95 S.W.2d at 1304); Farmers' Seed & Gin Co. v. Brooks, 125 Tex. 234, 81 S.W.2d 675, 677 (1935). I do not, however, subscribe to the proposition that testimony from a plaintiff which negatives the existence of a cause of action cannot be considered simply because it was elicited on cross-examination. Such is not a "hearing" in any sense of the word as was clearly stated in Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91, 95 (1935). Tenberg's dealings with Hajek, including the "warranty", constituted a part of a single over-all transaction making up, if it did, his cause of action. It was a part of his case to establish a bona fide cause of action against Hajek, and the instrument was an integral part thereof.

Tenberg and Hajek was or was not "defensive" in nature, I meet my dissenting brother vis-a-vis on the issue of the proof of a cause of action under this record. Here I encounter the renewed effort to import into our law the "implied warranty" of fitness in the face of a record which denies the existence of *any* warranty. I question the validity of the base of the opinion in Ford Motor Co. v. Grimes, 408 S.W.2d 313 (Eastland, Tex.Civ.App., 1966, error dism.), both factually and legally.[3] *Grimes*, it is to be noted, antedated the effective date of the Uniform Commercial Code discussed hereinafter. Factually, too, our case is much more similar to Ford Motor Co. v. Revert, supra, than it is to *Grimes*.

In my opinion, insofar as it relates to transactions entered into before the effective date of the Uniform Commercial Code, Pyle v. Eastern Seed Co., 145 Tex. 385, 198 S.W.2d 562, 563 (1946), has continuing vitality. This is so notwithstanding the modern change in the course of the law with respect to products liability and the caveat raised by the per curiam opinion, refusing the writ of error, n. r. e., in Perry Co. v. Sherwin-Williams Co., 431 S.W.2d 310 (Tex.Sup., 1968). The enigmic words used by the court in *Perry* may well be considered as notice that an extension of *Pyle* is not to be entertained, but do not necessarily constitute a repudiation of *Pyle*.

Chief Justice Calvert has recently reviewed the law on the subject of products liability in Texas as developed over the last twenty-seven years, Pittsburg Coca-Cola Bottling Works v. Ponder, 443 S.W.2d 546 (Tex.Sup., 1969), and it should do much to restore stability in this rapidly changing field of the law.

His counterpart on the California Supreme Court, Chief Justice Traynor, is also known for his far-reaching opinions in the field of products liability and in the extension of the doctrine of strict liability to non-food products, e. g., Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1962). In a scholarly opinion, Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145, 151 (1965), Chief Justice Traynor reviewed the policy reasons underlying the adoption of the strict liability rule where injury to person or property results from the use of the product. He then contrasted these policy reasons with those which would deny liability for consequential damage from the use of the product. There are cases to the contrary, e. g., Santor v. A and M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305, 16 A.L.R.3d 670 (1965), cited in the dissent; and, possibly, the opinion of *this* court in Ford Motor Co. v. Lemieux Lumber Co., 418 S.W.2d 909 (Beaumont, Tex.Civ.App., 1967, no writ), with which I am not in complete agreement. Cf. Ford Motor Co. v. Revert, supra (428 S.W.2d at 141).

In the search for a legal theory in this field which could be made to fit the needs of a modern society, the courts of the land have had a long and arduous task. Finally, the theory of strict liability in tort, ignoring and brushing aside the time-honored but inadequate privity doctrine, emerged as it is now stated in the Restatement of the Law of Torts, § 402A. This section has been adopted in its entirety in Texas, *Ponder*, supra, and cases therein reviewed.

---

3. Detailed proof in *Grimes*, established the direct connection of Ford with the faulty vehicle. No such proof is in evidence here. Indeed, only by speculation can we even guess the name of the manufacturer of the tractor. "John Deere, Moline, Illinois" may very well be the corporation known as "John Deere Company of Kansas City", but it cannot be learned from this record. See generally: General Motors Corp. v. Ewing, supra, and Ford Motor Co. v. Revert, supra.
I am not ingenuous enough to believe that there is *no* connection between our appellant and the manufacturer of the tractor; but, in this modern age of discovery practice, courts should not be required to rely upon speculation when evidence could be produced.

However, the doctrine of implied warranty of fitness of the product when it does not cause personal injury or damage to property is something entirely different, and is not included in § 402A, supra. Such a rule, which would include the case at bar, has been " * * * criticized as a bastard combination of tort liability and contract terminology * * *" 16 A.L.R.3d 683, 688 (1967). The theory is described in *Santor*, supra, in these words: "Its character is hybrid, having its commencement in contract and its termination in tort." 207 A.2d at 311.

So far, there are two distinct lines of authority on the subject, each being based upon a well-reasoned opinion from a strong court. *Santor* extends the rule of strict liability to consequential damages, i. e., loss of the bargain, while *Seely* would deny its entry into that field of law. In *Seely* the strong dissent further emphasizes the argument for the adoption of the rule to cases such as this. I submit, however, that there is a third approach to the problem, that of the Uniform Commercial Code which became effective July 1, 1966. Unfortunately, this third approach is not available to us in this instance. § 12.102, U.C.C.

This being a venue case, the opportunity for review is severely limited. Article 1728, V.A.C.S.; Brown v. Gulf Television Co., 157 Tex. 607, 306 S.W.2d 706 (1957); Harry Eldridge Co. v. T. S. Lankford & Sons, Inc., 371 S.W.2d 878 (Tex.Sup., 1963). On this interlocutory appeal, we have an incomplete record without a full factual development of the case. Under these circumstances, I think that we would be well advised to refrain from attempting to choose between the conflicting lines of cases exemplified by *Santor* and *Seely*, respectively. In the immediate future, the provisions of the Uniform Commercial Code, §§ 2.313–2.318, on the subject of warranties, will become of ever increasing importance. See: Keeton, "Products Liability," 23 S.W. Law Jrl. 1, 7 (1969).

If any additional reason need be assigned for abstaining from writing upon a subject not absolutely required by our record in a field of such expanding interest and change, we have but to point to Justice Norvell's remarks in McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787, 791 (Tex.Sup., 1967), and leave such extension of the common law doctrine, if it is to be extended, to our court of last resort.

Our case is adequately covered by Chief Justice Parker and I concur in the result. The view of my dissenting brother would, in my opinion, open Pandora's Box, from which new and unanticipated problems may fly, even though there be hope left in the bottom of the box. In all reasonable probability, the bench and the bar of this state will live with the Uniform Commercial Code for many years and solutions will be found for the myriad of problems which will emerge therefrom. We should not, I submit, multiply the number or increase the complexity of these problems by an ill-considered and unwarranted extension of a common law doctrine of doubtful validity into a field which has now been pre-empted by statute.