**GT & MC, INC., f/k/a Graver Tank and Manufacturing Company, Inc., a Subsidiary of Aerojet–General Corporation, Appellant,**

v.

**TEXAS CITY REFINING, INC., Appellee.**

**No. 01–90–01096–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 19, 1991.

Rehearing Denied Feb. 13, 1992.

Otto D. Hewitt, James R. Ansell, James Galbraith, Galveston, for appellant.

R. Lawrence Purdy, Minneapolis, George D. Martin, Galveston, John C. Hart, Dallas, for appellee.

Before SAM BASS, HUGHES and DUNN, JJ.

## OPINION

DUNN, Justice.

The issue in this case is whether a trial court may award consequential damages arising from breach of an express warranty for design requirements, when the contract in question limits the aggrieved party's damages to repair or replacement only for workmanship and materials defects. We hold that the trial court correctly interpreted and enforced the parties' agreement and, therefore, affirm.

This is an appeal from a lawsuit for damages arising out of the failure of an oil tank designed, manufactured, and installed by appellant, GT & MC, Inc. at the Texas City, Texas, facility of appellee, Texas City Refining, Inc. ("TCR"). The tank, designated Tank 089, is 340 feet in diameter and 48 feet high, with a capacity of 750,000 barrels of oil. The critical feature of the tank, for purposes of this appeal, is the

roof, a patented design called an "Everfloat" roof, designed to float on the surface of the oil in the tank. Floatation is provided by a circular segmented ring pontoon that forms the circumferential outer edge of the roof and by multiple pontoons of various sizes spread over the remaining area of the roof. When oil is added, the roof rises, and as oil is withdrawn, the roof lowers.

The cause of action was based on breach of warranty. Appellant expressly warranted the tank and roof to withstand a wind velocity of 125 miles per hour, and to further withstand 10 inches of rainfall in a 24 hour period, even when the roof drains were blocked.

On August 17 and 18, 1983, Hurricane Alicia struck the Texas coast. Testimony at trial established that winds during the storm did not exceed 125 miles per hour at the TCR facility and that the rainfall did not exceed the 10 inch per 24 hour period design limit. Nevertheless, during the hurricane, the Everfloat roof sank, resulting in a loss of approximately 38,754 barrels of crude oil. TCR established that it incurred expenses in repairing the tank and roof, renting substitute tank space during the repair period, and transferring the oil from Tank 089 to substitute tanks.

TCR brought suit against appellant, seeking recovery for these damages. The jury awarded TCR $380,000 for loss of use of the tank and $570,000 for the value of crude oil lost, and the trial court entered judgment for the combined amount, plus interest.

Appellant does not contest any of the facts relating to its breach of express warranty, but asks this Court to reverse and render judgment that TCR take nothing by way of its suit. In six points of error, appellant claims that the trial court erred and abused its discretion in refusing to enforce the provision of the contract pertaining to damages. Appellant maintains that it was entitled to judgment notwithstanding the verdict as a matter of law or alternatively, a new trial, where lost use and lost product damages were not recoverable under the contract.

In order for a trial court to disregard a jury's findings and to grant a motion for judgment notwithstanding the verdict, it must determine that there is no evidence upon which the jury could have relied for its findings. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987); *Navarette v. Temple Indep. School Dist.*, 706 S.W.2d 308, 309 (Tex.1986). A trial court may refuse to grant a motion for judgment notwithstanding the verdict only if there is more than a scintilla of competent evidence to support the jury's finding. *Navarette*, 706 S.W.2d at 309. The standard of review for a trial court's refusal to grant a motion for new trial is that of abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983).

Our consideration of point of error one is dispositive of appellant's points of error one and two. Appellant states that the trial court erred and abused its discretion in entering judgment for plaintiff and denying defendant's motion for judgment or alternatively judgment notwithstanding the verdict and motion for new trial, because the contract expressly limited breach of warranty damages exclusively to repair or replace defective material or workmanship.

The Texas Supreme Court recently concluded that warranty law applies to both service transactions, as well as to sales of goods. *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 574–75 (Tex.1991). Thus, we need not reach the issue of whether this transaction was for services or for goods, as urged by appellee. We do, however, utilize case law that has evolved from the law of contracts, as well as from interpretation of the Uniform Commercial Code, for guidance.

Our analysis begins with the language of the contract. In construing a written contract, the primary concern of the court is to ascertain the parties' true intentions as expressed in the instrument itself. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987). If the written instrument is worded so that it can be given a certain definite meaning or

interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968); *Community Dev. Serv., Inc. v. Replacement Parts Mfg.,* 679 S.W.2d 721, 724 (Tex.App.— Houston [1st Dist.] 1984, no writ).

Section 2.316 of the Uniform Commercial Code, TEX.BUS. & COM.CODE ANN. § 2.316 (Vernon 1968), specifies that "words or conduct relevant to the creation of an express warranty and words of conduct tending to negate or limit warranty shall be construed whenever reasonable *as consistent with each other....*" (Emphasis added.) Thus, we must examine whether the express warranty pertaining to design was limited under the contract.

The contract between TCR and appellant consisted of TCR's bid request (Request for Quotation), appellant's bid proposal, drawings, specifications, contractor list of bid documents, contractor clarification of exceptions, contractor rules and regulations, and detailed drawings and instructions consistent with the drawings and specifications necessary for proper execution of the work, and representations made in advertising materials. The Request for Quotation contains language in section 15.3, titled *"Protection of Work and Property,"* that excludes liability for consequential damages with respect to appellant's construction obligations; however, this section also references *workmanship* guarantees in section 4.0 that limit damages to repair or replacement of defective materials or *workmanship.* The scope of "workmanship" is discussed in section 10.0, as follows:

WORKMANSHIP

All of the work shall be executed by none but experienced mechanics and shall be of the highest quality and complete in all respects and appearance, whether finally concealed or exposed.

The Request for Quotation was dated April 22, 1980, and was referenced in the contract, dated May 12, 1980, as follows:

Thank you for your inquiry dated April 22, 1980.

In accordance with the terms, conditions and specifications set forth in your inquiry, except as may be hereinafter amplified or amended, we propose to furnish, fabricate, deliver and erect on your foundations at Texas City, Texas, One (1) 340' diameter × 48' high Floating Roof Tank as shown on our design sketch 80-76 dated April 29, 1980 for the price shown on the attached price schedule.

The section titled *"Guarantee"* specifies:

Any **workmanship or material** that may prove defective within one year from the date of completion of erection, ordinary wear and tear excepted, will be repaired or replaced without expense to you. We do not, however, accept responsibility for other costs, for loss of time or contents, or for other damages that may be attributed to **such defects.**

(Emphasis added.) Our review of the documents and of the record failed to produce any other evidence offered by the parties to clarify the term "workmanship."

Language used by parties in a contract should be accorded its plain, grammatical meaning unless it definitely appears that the parties' intention would thereby be defeated. *Lyons v. Montgomery,* 701 S.W.2d 641, 643 (Tex.1985). An unambiguous writing will be deemed to express the intention of the parties, and the objective, not subjective, intent will control. *Pfeffer v. Southern Tex. Laborers' Pension Trust Fund,* 679 S.W.2d 691, 695 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Parties to a contract may agree on remedies for breach and that the agreed remedy is exclusive. *O'Neal v. Bush & Tillar,* 108 Tex. 246, 173 S.W. 869, 870 (Tex.1915). If the parties agree in writing on limitation of the warranty, the seller is not bound by the warranty beyond the terms of the agreed limitation. *John Deere Co. v. Tenberg,* 445 S.W.2d 40, 43 (Tex.Civ.App.—Beaumont 1969, no writ).

At trial, appellee demonstrated that appellant breached its express warranty that the storage tank would withstand wind loads of 125 miles per hour and rainfall of

10 inches per 24 hour period. Appellant does not contest either the fact of the design warranty or breach of that warranty. Once appellee established the warranty and breach of the warranty, it was entitled to pursue any and all remedies for damages, unless the warranty was disclaimed or liability for breach was limited. *See, e.g.,* TEX.BUS. & COM.CODE ANN. §§ 2.316, 2.719 (Vernon 1968). Appellant did neither.

We hold that the language in the contract of May 12, 1980, expressly limited TCR's recovery only for defects in *materials or workmanship* to damages for repair or replacement value. No mention was made in the guarantee of remedies for *design defects;* therefore, remedies for breach of the express warranty related to design requirements were neither limited nor disclaimed. *See S–C Indus. v. American Hydroponics Sys.,* 468 F.2d 852, 855 (5th Cir.1972). Thus, evidence of consequential damages was relevant and admissible. TEX.R.CIV.EVID. 401.

Points of error one and two are overruled.

█ In point of error three, appellant complains that the trial court erred and abused its discretion in overruling defendant's objections and admitting TCR's damage evidence. Appellant contends that TCR's evidence was limited to hearsay documents improperly admitted over objections of appellant's counsel.

█ To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error was calculated to cause and probably did cause rendition of an improper judgment. *Harrison v. Texas Employers Ins. Ass'n,* 747 S.W.2d 494, 498 (Tex.App.—Beaumont 1988, writ denied); *Texaco Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. denied,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). Reversible error does not usually occur in connection with rulings on questions of evidence unless the appellant can demonstrate that the whole case turns on the particular evidence that was admitted

or excluded. *Texaco, Inc.,* 729 S.W.2d at 837.

Appellant maintains that TCR failed to effect strict compliance with rule 803(6) of the Texas Rules of Civil Evidence. This rule pertains to admission of business records and provides:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness....

TEX.R.CIV.EVID. 803(6). Appellant points to invoices that TCR offered to prove up damages that were not "made" by TCR employees. The invoices were presented to TCR requesting payment for services rendered and facilities leased. Appellant notes that the records custodian of TCR should not have been allowed to testify about records sent by another entity and that TCR failed to establish that the invoices became TCR's business records.

█ Though hearsay evidence is generally not admissible, records of regularly conducted activities are an exception to the general rule. The predicate for admissibility under the business records exception is established if the party offering the evidence demonstrates that the records were generated pursuant to a course of regularly conducted business activity and that the records were created by or from information transmitted by a person with knowledge, at or near the time of the event. *Clark v. Walker–Kurth Lumber Co.,* 689 S.W.2d 275, 281 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). The items appellant claims are inadmissible are plaintiff's exhibits 103 through 109.

These exhibits include invoices that establish the cost of moving the oil that was kept in Tank 089 before Hurricane Alicia, invoices covering inspection services Marintech, Inc. provided to TCR during the process of moving oil from Tank 089 to other storage facilities, invoices regarding rental of substitute storage tank space for the oil that was kept in Tank 089, a TCR record indicating that an invoice in exhibit 105A was approved and paid, a TCR document that values the inventory in Tank 089 at the time of the tank failure, a computer-generated calculation of the value of the crude oil in Tank 089 for the month of the tank failure, and a computer-generated worksheet containing information about various crudes contained in Tank 089. Joseph Stratman, custodian of records for TCR, testified that the invoices and documents were maintained by TCR in the regular and normal course of its business. Stratman testified, based on personal knowledge, about who generated the documents and about the manner in which these records were kept.

Appellant would urge this Court to adopt an interpretation of rule 803(6) that the term "made" means "authored by." We decline to do so. Though the documents in question were initially authored by outside vendors, employees of TCR placed numerous markings on the invoices after receipt by TCR. These markings indicated the date of receipt, identity of the recipient, whether the invoices were approved for payment, who approved the invoices for payment, and other information about how the invoices were processed. Thus, the invoices became TCR's primary record of information about the underlying transaction. Further, Stratman testified about the procedure by which the invoices became TCR's business records. The documents were date stamped when received, initialed by a TCR employee, stamped as approved for payment, initialed again, and kept in the ordinary course of TCR's business. Stratman also testified that he had personal knowledge of the manner in which the records were kept, as contemplated by rule 803(6). *Seaside Indus., Inc. v. Cooper,* 766 S.W.2d 566, 571 (Tex.App.—Dallas 1989, no

writ); *Texon Energy Corp. v. Dow Chem. Co.,* 733 S.W.2d 328, 330 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

Appellant also argues, for the first time on appeal, that plaintiff's exhibits 107 through 109 were not admissible as summaries of business records under Texas Rule of Civil Evidence 1006 and that the damages evidence contained in these exhibits should have been excluded as a sanction for an alleged discovery violation. This Court will not consider a basis for objection that was not raised at the trial court level. Tex.R.App.P. 52(a).

We find that the trial court properly overruled appellant's objections and admitted plaintiff's exhibits 103 through 109 under the business record exception to the hearsay rule. As we find no error in the trial court's admission of these exhibits, we overrule point of error three.

In points of error four, five, and six, appellant contends that the trial court erred and abused its discretion in overruling defendant's objections to question number seven and in submitting the same to the jury, in denying appellant's motion for new trial, and in entering judgment on question number seven, as there was no evidence or insufficient evidence to support submission of question number seven or the jury's answers to this question.

A trial court has great discretion in submitting jury questions. *Mobil Chem. v. Bell,* 517 S.W.2d 245, 256 (Tex. 1974). This discretion is subject only to the requirement that the submitted questions must fairly place the disputed issues before the jury for its determination. *Baker Marine Corp. v. Moseley,* 645 S.W.2d 486, 489 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); Tex.R.Civ.P. 277. In order for a trial court to disregard a jury's findings and to grant a motion for judgment notwithstanding the verdict, it must determine that there is no evidence upon which the jury could have relied for its findings. *Quinn,* 726 S.W.2d at 19; *Navarette,* 706 S.W.2d at 309. A trial court has wide discretion to deny a motion for new trial and its action will not be disturbed on ap-

peal absent a showing of an abuse of discretion. *Jackson*, 660 S.W.2d at 809.

Appellant complains about the one question that was submitted to the jury regarding damages. Question number seven states:

What sum of money, if paid now in cash, would fairly and reasonably compensate Texas City Refining for its damages, if any, resulting from the occurrence in question?

. . . .

A. Loss of use of the tank. Consider the reasonable value of the loss of use of the tank in question for a period of time required to repair the damage, if any, caused by the occurrence in question. Answer in dollars and cents, if any.

ANSWER: $380,000.00

B. Value of crude oil lost, if any.

ANSWER: $570,000.00

Based on our discussion of point of error three, we overrule points of error four, five, and six.

In point of error seven, appellant complains that the trial court erred and abused its discretion in denying its objections and in refusing to instruct the jury on "act of God." The trial court has considerable discretion in deciding what instructions are necessary and proper. *Johnson v. Whitehurst*, 652 S.W.2d 441, 447 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). A trial court's refusal to submit requested instructions will not be reversed on appeal unless the court abused its discretion. *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 836 (Tex.1986). No abuse of discretion is shown unless the requested instructions were so necessary to enable the jury to render a proper verdict that the court's refusal probably did cause rendition of an improper verdict. *Steinberger v. Archer County*, 621 S.W.2d 838, 841 (Tex.App.—Fort Worth 1981, no writ).

Appellant expressly warranted the tank and roof to withstand a wind velocity of 125 miles per hour, and to further withstand 10 inches of rainfall in a 24 hour period. Evidence adduced at trial showed that on August 17 and 18, 1983, the dates

of the damage in question, Hurricane Alicia struck the Texas coast. The overwhelming weight of testimony at trial, no longer disputed by appellant, was that winds during the storm did not exceed 125 miles per hour at the TCR facility and that the rainfall did not exceed the 10 inch per 24 hour period design limit.

In contract cases, the rule is that an act of God does not relieve the parties of their obligations unless the parties expressly provide otherwise. *See Metrocon Constr. Co. v. Gregory Constr. Co.*, 663 S.W.2d 460, 462 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). To avoid liability for acts of God, contracts frequently contain "force majeure" clauses, which are enforceable under Texas law. *See, e.g., Rowen Co. v. Transco Exploration Co.*, 679 S.W.2d 660, 664 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), *cert. denied*, 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 61 (1985). Because no such clause is present in the contract between appellant and TCR, the obligation to perform was absolute and could not be excused. *Metrocon*, 663 S.W.2d at 462. Thus, the trial court did not abuse its discretion in refusing to submit the instruction on act of God.

The jury found that appellant expressly warranted that the tank would withstand 125 miles per hour of wind and that it would withstand 10 inches of rainfall in a 24 hour period. In light of our finding that the evidence was sufficient to establish that these weather conditions were not exceeded at TCR during the hurricane, we decline to find that the court's refusal to instruct the jury on "act of God" caused the rendition of an improper verdict. Point of error seven is overruled.

### Appellee's Cross–Points

In its first cross-point, TCR complains that the trial court erred in excluding evidence pertaining to the cost of replacement or repair as a discovery sanction. On February 25, 1989, following a hearing, Judge Henry Dalehite ordered TCR to produce certain documents before February 28, 1989. On February 24, 1989, TCR filed

and served its response to the document production order. At a hearing, TCR's attorneys stated they had conducted an exhaustive search of TCR's corporate records for the documents and offered the affidavit of Stratman to establish that, during the sale and winding down of TCR's Texas City facility, many of the records were placed on microfilm and stored. Stratman's affidavit stated that he did not search approximately 970 boxes of documents in storage at the Texas City office because he believed the boxes did not contain responsive information. TCR claimed that appellant was allowed to review all its records, including the microfilm, at appellant's convenience.

In connection with another lawsuit, appellant's attorneys began a full scale review of the microfilm documents at the Texas City office. TCR claims that its counsel did not learn of the law firm's review until appellant brought its motion for sanctions, on May 10, 1990.

At Stratman's February 20, 1990, deposition, appellant's counsel indicated he sought original invoices relating to certain damage claims. After the deposition, Stratman located the two documents and provided them to appellant's counsel. At Stratman's April 24, 1990, deposition, appellant's counsel asked Stratman to search the microfilm records located at TCR's Texas City office for documents relating to the value of lost crude oil. After the deposition, Stratman reviewed 19 rolls of microfilm and located several invoices that were supporting documentation for accounting summaries that had previously been produced to appellants. The invoices were sent to appellant's attorneys on May 15, 1990.

Following this supplementation, appellant filed a motion for sanctions. At a hearing on May 15, 1990, Judge Dalehite found that, as of the discovery cutoff date, TCR had produced every responsive document of which it was aware; however, he found that TCR failed to fully comply with the February 15, 1989, production order. On May 21, 1990, the morning of trial, Judge Dalehite ordered that TCR was pro-

hibited from presenting evidence to the jury of repairs to the tank or to its roof. TCR objected and made an offer of proof.

A trial court may impose sanctions on any party that abuses the discovery process. Tex.R.Civ.P. 215. Rule 215(5) provides that "A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response ... unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record." The discovery sanctions imposed by a trial court are within that court's discretion and will be set aside only if the court clearly abused its discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). In this regard, the discretion of the trial court is broad. *Carr v. Harris County*, 745 S.W.2d 531, 532 (Tex.App.—Houston [1st Dist.] 1988, no writ). In reviewing the trial court's order of sanctions, the appellate court may not substitute its judgment for that of the trial court. *Id.* at 532. To establish a clear abuse of discretion, it must be shown that the trial court's action was arbitrary or unreasonable in light of all the circumstances of the case. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984). The trial court abuses its discretion if the imposed sanction does not further one of the purposes of discovery. *Bodnow Corp.*, 721 S.W.2d at 840. The Texas Supreme Court has identified three purposes for discovery sanctions: (1) to secure the parties' compliance with the rules of discovery; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties that violate the rules of discovery. *Id.* If the sanction satisfies one of these purposes, the trial court's ruling will be affirmed. *Id.*

In the present case, the trial court concluded that TCR failed to timely produce evidence of repair and replacement costs. Thus, in disallowing TCR to introduce evidence of repair and replacement costs, the

trial court's imposition of sanctions clearly was directed specifically at the discovery abuse in question. TCR's piecemeal, post deposition compliance did not obviate the abuse in question. *See, e.g., Mower v. Haymes,* 780 S.W.2d 896, 899 (Tex.App.—Houston [1st Dist.] 1989, no writ). We find that the trial court did not abuse its discretion in imposing sanctions on TCR for failure to comply with an order of the court. *See Wilson v. Snead Site Preparation, Inc.,* 770 S.W.2d 840, 842–43 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Cross-point one is overruled.

In cross-point two, appellee claims that the trial court erred in refusing to submit a special issue on products liability to the jury. Appellee notes that it was not prejudiced by the trial court's failure to submit the special issue on products liability, because TCR recovered all its damages under a warranty theory, except those items excluded as a discovery sanction. TCR, therefore, seeks relief from this alleged error of the trial court only if this Court grants appellant's request for a new trial. Such request was denied; therefore, we do not reach cross-point two.

We affirm the judgment of the trial court.