

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00087-CV

MARKUS MILLER AND CELIA MILLER, APPELLANTS

V.

BOB DURHAM, APPELLEE

On Appeal from the County Court at Law No. 3
Lubbock County, Texas
Trial Court No. 2012-567,938, Honorable Judy Parker, Presiding

August 19, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellants, Markus Miller and Celia Miller, appeal from a final judgment granted to appellee, Bob Durham, in a breach of contract action against the Millers. Durham sued the Millers for breach of a grazing lease and the Millers answered, filed a cross-claim and asserted certain affirmative defenses. Following a bench trial, judgment was rendered in favor of Durham for $75,450 together with pre- and post-judgment interest and reasonable attorney's fees. Pursuant to the Millers' request, the trial court filed findings of fact and conclusions of law. The Millers subsequently moved for a new trial,

and the motion was overruled by operation of law. Thereafter, the Millers perfected this appeal.

The Millers now bring forth two issues. First, the Millers contend that the evidence was both legally and factually insufficient to support the trial court's judgment. Second, they contend that the affirmative defense of repudiation was conclusively established by the evidence. Disagreeing with the Millers, we will affirm.

Factual and Procedural Background

This lawsuit centers around a grazing lease entered into between the Millers as lessee and Durham as lessor. The term of the lease was from January 1, 2010, until December 31, 2014. The lease covered approximately 889 acres of land in Lubbock and Hale Counties of Texas. The lease called for lease payments of $25,250 per year, payable in quarterly installments of $6,312.50 each quarter on the first of January, April, July, and October of each year covered by the lease. There were other standard terms to the lease, such as the lease terms could only be amended by a written document signed by all parties; however, the lease did not contain an "act of God" or *"force majeuere"* clause.

The testimony at trial showed that the Millers first began placing their cattle on the leased premises in May of 2010. The leased grazing land consisted of three distinct tracts. The tracts were further divided by internal fencing thereby allowing a user to ascertain which portions of the grazing land to use at any particular time. Beginning in 2010, the area of the state where the tracts are located began experiencing extreme

2

drought conditions. According to the testimony, during the entire time the cattle were on the leased premises, there was very little new growth grass.

The testimony from Durham and Markus Miller had some differences; however, the differences were in interpretation of the comments made. It is clear from the record that Durham had very concrete ideas about how to properly graze the property and maintain the viability of the grass for future use. Likewise, from the testimony produced by the Millers, it is clear that the Millers' position was that the steps they were taking would allow continued grazing of the leased property while maintaining the ability of the grass to regenerate when rain came.

The Millers point to testimony that at some time on Tract 3 of the leased premises, Durham opened one or more of the internal gates that allowed the cattle to move from one pasture to another. Additionally, the Millers contend that, finally, Durham requested that they remove the cattle from the tract entirely. Durham agreed that he might have opened a gate but denied that he ordered the cattle be removed from the tract. Rather, Durham contends that he requested that the Millers do that, and they acquiesced to the suggestion. The record reflects other incidents that the Millers term as incidents that effectively breached the contract because Durham ordered cattle to be removed; and Durham insists that these incidents were ones in which he made suggestions or recommendations to which the Millers agreed.

After hearing the evidence, the trial court found that the Millers had breached the contract and entered a judgment that Durham collect $75,450 in damages. Further, the

trial court subsequently filed findings of fact and conclusions of law. As pertinent to this appeal, the findings of fact are as follows:

(4)     The lease contract was performed by both parties in accordance with the terms of the contract through December 31, 2011.

(5)     The [appellants] failed to pay the quarterly installment due on January 1, 2012, and no further payments were paid by [appellant] under the terms of the contract.

(6)     The [appellee] performed all obligations required of him through January 1, 2012.

(7)     [Appellee] did not interfere with the use or possession of the leased premises in any material way during the term of the contract.

(8)     The [appellants] failed to perform their obligation for the payment of quarterly lease payments, beginning with the first quarter of the year 2012.

(10)    Written demand for payment of the unpaid balance under the lease contract was provided to the [appellants] on April 12, 2012, to which [appellants] did not respond.

Based upon its findings of fact, the trial court entered the following conclusions of law:

(1)     The [appellants] breached the contract of the parties by failing to pay installments due under the contract after January 1, 2012.

(2)     There was no breach of the contract by [appellee].

(3)     There was no failure of consideration . . . to be provided by the [appellants] under the contract.

(4)     There was no rescission, repudiation or waiver [by] the [appellee] related to the enforcement of the contract.

The Millers now appeal contending the evidence is both legally and factually insufficient to sustain the judgment of the trial court. Additionally, the Millers contend

4

that the evidence conclusively established repudiation of the contract by appellee. Disagreeing with the Millers, we will affirm the trial court.

Sufficiency of the Evidence

Standard of Review

According to *City of Keller v. Wilson*, "'[n]o evidence' points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact." 168 S.W.3d 802, 810 (Tex. 2005). Our review requires viewing the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding all contrary evidence unless reasonable jurors could not. *Id.* at 807. We may not substitute our judgment for that of the trier of fact as long as the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* at 822. This is but another way of saying that, as long as there is more than a scintilla of evidence to support the jury's answer to the fact question at issue, the legal sufficiency challenge must fail. *See Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 552 (Tex. 2004). The fact finder is the only judge of the witnesses' credibility and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819.

In a factual sufficiency review, we consider all of the evidence both supporting and contrary to the fact finder's answer to the fact question at issue. *See Plas-Tex, Inc.*

*v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Because Durham bore the burden of proof at trial, we will only reverse if we find that the evidence supporting the fact finder's finding is so weak or so contrary to the finding as to be clearly wrong and manifestly unjust. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex. App.—Amarillo 1988, writ denied). When conducting a factual sufficiency review, we may not substitute our judgment for that of the fact finder. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Additionally, the fact finder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See id.*

Analysis

Initially, the Millers contend that there was legally insufficient evidence to support the trial court's factual findings. Specifically, they contend that Durham requested that the Millers remove the cattle from one pasture to another. Eventually, Durham requested that the Millers remove all the cattle from the grazing pastures. The Millers conclude that this testimony indicates that it was Durham and not the Millers who first breached the contract. However, Durham testified that he never required the Millers to remove the cattle. Instead, Durham testified that he made recommendations and requests that the cattle be moved and ultimately removed. Durham's position throughout was that the Millers acquiesced to the requests voluntarily. Throughout the trial, when the issue of the discussions regarding moving the cattle from one pasture to another or, ultimately, from the pasture to other locations, the term "requests" was emphasized.

The trial court heard this testimony as the fact finder and found in finding of fact 4 that "[t]he lease contract was performed by both parties in accordance with the terms of the contract through December 31, 2011." Further, in finding of fact 7, the trial court found that, "[Durham] did not interfere with the use or possession of the leased premises in any material way during the terms of the contract." The cumulative effect of these findings is that Durham's requests were not a breach of the contract. Remembering that the fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony, the findings of fact 4 and 7 are supported by the testimony. *See City of Keller*, 168 S.W.3d at 819. Accordingly, there is more than a scintilla of evidence to support the trial court's findings of fact on the issue of whether Durham first breached the lease. *See Tarrant Reg'l Water Dist.*, 151 S.W.3d at 552. Accordingly, the Millers' issue that the evidence was legally insufficient to support the trial court's judgment is overruled.

When considering the factual sufficiency of the evidence, we do not view the evidence in the light most favorable to the trial court's judgment; rather, we must review all of the evidence and determine whether the evidence supporting the fact finder's finding is so weak or so clearly contradictory to the finding as to be clearly wrong or manifestly unjust. *See Raw Hide Oil & Gas, Inc.*, 766 S.W.2d at 276. However, as in a legal sufficiency review, the fact finder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761.

Again, the Millers focus their appeal on the conflicting testimony, with a view that Durham first breached the contract by forcing the Millers to move cattle and, ultimately,

to remove the cattle from the leased premises. While the evidence is present that might have allowed the trial court to make such a finding, the trial court, upon hearing the testimony of the witnesses, chose to believe Durham's version of the facts, that is, that Durham made recommendations and the Millers acquiesced to them. These recommendations, according to the testimony, were never delivered in the form of demands but were simply recommendations. The Millers chose to accept them and acted accordingly. Ultimately, the question of whether the drought forced the removal of the cattle from the leased premises is not before the Court because the record is clear about one aspect: the contract at issue did not contain an act of God or *force majeure* clause. Therefore, the drought would not be an excuse for performance of the contract. *See GT & MC, Inc. v. Tex. City Ref., Inc.,* 822 S.W.2d 252, 259 (Tex. App.—Houston [1st Dist.] 1991, pet. denied). The Millers could have denied Durham's request and kept all of the cattle on the lease; however, they chose not to.

As the fact finder, after hearing the evidence and viewing the witnesses as they testified, the trial court chose to believe Durham's version of the facts. We cannot say that such a finding is supported by such weak evidence or is so clearly contradictory to the trial court's finding as to be clearly wrong or manifestly unjust. *See Raw Hide Oil & Gas, Inc.*, 766 S.W.2d at 276. Accordingly, the evidence is factually sufficient to support the trial court's judgment. The Millers' contention that the evidence was factually insufficient to support the judgment is overruled.

## Repudiation

The Millers' second issue contends that the evidence conclusively established that Durham repudiated the contract. This, according to the Millers' theory, means that they were then excused from performance of their contractual obligations. To establish repudiation the Millers would have to show that Durham absolutely and unconditionally refused to perform the contract without just cause. *See El Paso Prod. Co. v. Valence Operating Co.,* 112 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (op. on reh'g). To support this proposition, the Millers refer the Court to the testimony at trial discussed in the previous section.

As stated above, the trial court heard this testimony and concluded that Durham had not breached the contract and, in its conclusions of law, that Durham had not repudiated the contract. Further, the Millers' own conduct was inconsistent with the conclusion that Durham had repudiated the contract. The decision to continue performing under the contract was in the hands of the Millers, yet they chose not to continue performing. Neither did the Millers opt to rescind the contract. These options are the ones that were open to the Millers under the repudiation affirmative defense. *See Bumb v. Intercomp. Techs., L.L.C.,* 64 S.W.3d 123, 125 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 211 (Tex. 1999)). Rather, the record reflects that the Millers opted to remove the cattle from the lease and, subsequently, tried to make a partial payment to continue the lease. Such action does not show repudiation of the contract by Durham.

The evidence shows that Durham had made suggestions and recommendations to the Millers regarding the rotation of the cattle in the pastures in question and, ultimately, he suggested that they remove the cattle all together. It was within the Millers' control to accept or refuse the recommendations and suggestions. Their decision to remove the cattle was not as a result of Durham's absolute and unconditional refusal to perform the contract. *See El Paso Prod. Co.,* 112 S.W.3d at 621. Therefore, repudiation was not conclusively proven. The Millers' second issue is overruled.

## Conclusion

Having overruled the Millers' issues, we affirm the trial court's judgment.


Mackey K. Hancock
Justice